Carol Diann REED, Appellant,

v.

Tim REED, Respondent.

No. WD 41174.

Missouri Court of Appeals, Western District.

Aug. 1, 1989.

Michael P. Swisher, Kansas City, for appellant.

Robert D. Crawford, Carrollton, for respondent.

Before GAITAN, P.J., and MANFORD and ULRICH, JJ.

GAITAN, Presiding Judge.

Appellant, Carol Diann Reed, appeals the judgment rendered in the dissolution decree against respondent, Tim Reed. She alleges that the trial court erred in its division of marital property, award of child support and attorney fees. We affirm the judgment of the trial court in part and reverse and remand in part.

Carol and Tim were married March 10, 1973, in Carrollton, Carroll County, Missouri, and lived together continuously from that date until their separation on September 17, 1987. During the fifteen year marriage, there were two children born of the marriage, namely Stephanie Renee Reed, born August 19, 1978, and Tiffanie Ann Reed, born March 27, 1985. At the time of their separation, the parties resided at 4470 South Ridgecrest, Springfield, Missouri.

Carol moved herself and the two children to Carrollton, Missouri to live with her parents on September 17, 1987, and remained there until she and the children returned to Springfield, Missouri on May 16, 1988.

Carol is employed at Tiger Steel Corporation in Springfield, Missouri, in purchasing and inventory. Tim is employed at AT & T in Springfield, Missouri as a computer technician. At the time of trial, Carol earned $1,376 gross income and $1,040 net income per month. Her monthly expenses were $2,135.95. Tim's gross wages from January through June 11, 1988 were $17,350.17. For the calendar year 1986, Tim's annual gross wages were $37,426.40. During 1987, his annual gross wages were $37,202. As of the date of trial, Tim's gross pay every two weeks was $1,278, having received a raise in June 1988 or $33,228 annually. His monthly expenses were $1,538.12. The difference in the 1987 and 1988 incomes are apparently attributed to overtime pay in 1987.

Carol had requested that child support be retroactive to the date on which the Motion for Temporary Child Support, Maintenance and Attorneys' Fees was filed on April 4, 1988. In addition, she sought an award of maintenance in the amount of One Dollar ($1) per year.

At the time of the trial, Carol did not have, and testified that she never would have, any kind of retirement or pension plan at Tiger Steel Corporation. During the seventeen years that Tim was employed by AT & T, a contribution was made to the AT & T Savings Plan by deductions from his paychecks from between $35 per pay period to $70 per pay period. On or about May 6, 1988, Tim received $18,000, less taxes in the amount of $1,183.63, from the AT & T Savings Plan. Tim received a check in the amount of $16,316.37 as a result of this distribution. When the parties separated on September 17, 1987, Carol withdrew $1,800 from the parties' joint savings account.

From this Savings Plan distribution, Tim testified that he did the following: (1) paid the 1987 Federal and State Taxes in the

amount of $2,554; (2) withheld $5,040 to allegedly pay taxes on the distribution; (3) paid the tax return preparation fee of $100; (4) paid MasterCard in the amount of $580; (5) paid Grolier Enterprises for World Book Encyclopedias in the amount of $250; (6) paid $1,842 in payments on the 1985 Oldsmobile; (7) paid a down payment on his new 1988 Chevrolet Pickup Truck in the amount of $2,500, sales tax on the purchase of the truck in the amount of $802, payment of a camper shell for the new truck in the amount of $718; (8) paid 1987 property taxes in the amount of $105; and (9) made payment of $46 in interest charges on a $3,000 loan to pay taxes. Tim further testified that, after the withdrawal of the $18,000 there was probably a couple thousand dollars left in the Savings Plan. He admitted that the amount which he had been withholding for taxes on the withdrawal from the Savings Plan, $5,040, did not take into account what the AT & T records showed as being a taxable distribution and the amount of tax already withheld by AT & T.

As a result of his employment with AT & T, Tim Reed receives a service pension, which is non-contributory and available after thirty years of service or sixty-five years of age, and a non-contributory deferred vested pension in which he became 100% vested as of April 1, 1988. Tim began his employment with AT & T on June 7, 1971, and the parties were married March 10, 1973. Tim was not eligible as of the date of trial for the service pension.

Carol testified that she was unable to pay her attorneys' fees incurred as a result of the dissolution proceedings. Her agreement with the law firm of McCalley and Gorham was that she would pay an hourly rate of $60 for Mr. Gorham's time and $75 for Mr. McCalley's time. Carol incurred charges for the work that was performed in the dissolution proceedings in the amount of $2,343 for fees and $103.82 for expenses, for a total of $2,446.82.

The trial court ordered the parties to hold the two parcels of real estate as tenants in common, each owning an undivided one-half interest. Tim was ordered to make the monthly payments on the parties' Promissory Note secured by Deed of Trust against the family home located at 4470 South Ridgecrest, Springfield, Missouri. Effective September 1, 1988, Tim was to receive a credit against Carol's interest in the property to the extent of one-half of all payments made by him attributable to the note, real estate taxes and casualty insurance. The parties were ordered to each pay one-half of the property taxes attributable to the Nixa lot. Tim was given possession of the family home.

Carol was awarded the 1985 Oldsmobile Cutlass Salon, subject to the indebtedness to General Motors Acceptance Corporation; the 1987 Chevrolet Pickup Truck, with camper and C.B. Radio; all household goods, furniture, clothing, personal effects and other personal property in her possession; 42 shares of AT & T common stock; 3 shares of U.S. West, Inc.; 15% of Tim's AT & T Pension Plan upon Mr. Reed's retirement, if she is living at the time; and $3,000 cash from Tim.

Tim was awarded the new 1988 Chevrolet Four–Wheel Drive Pickup Truck with camper shell, subject to the indebtedness in favor of Springfield Telephone Company Credit Union; the 1979 Cheater 17 foot fiber-glass boat, trailer and all motors and accessories to the boat; all fishing rods, reels, sporting equipment and clothing; all household goods, furniture, clothing, personal effects and other personal property in his possession; 42 shares of AT & T common stock; 3 shares of U.S.West, Inc. common stock; and his AT & T Pension and Retirement benefits to the extent not awarded to Carol. In addition to the pickup truck awarded to him, Tim had the use of a company car. He was also ordered to pay Carol's attorney $500.

The trial court ordered Tim to pay child support of $112.00 per child every two weeks for a total of $224 every two weeks, beginning August 15, 1988. Both parties were denied any award of maintenance.

On August 30, 1988, Carol filed her Motion to Amend the Judgment and For a New Trial. The trial court overruled the

Motion on October 13, 1988. This appeal followed.

## I.

The first contention on appeal is that the trial court erred in dividing the real estate and personal property in that there was no substantial evidence to support the division. We disagree.

Under the applicable standard for appellate review, the trial court is vested with considerable discretion in dividing marital property and appellate courts will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984); *Michael v. Michael*, 727 S.W.2d 424, 425 (Mo.App.1987).

We shall first consider the division of the marital real property. At the time of the trial, the parties owned two parcels of real estate as tenants by the entirety. One of the parcels was the marital home located at 4470 South Ridgecrest, Springfield, Missouri, and the other was a vacant lot located in Nixa, Missouri. The marital home was subject to the lien of a first deed of trust in the favor of Guaranty Federal Savings and Loan Association in the approximate amount of $20,000. The Nixa lot was unencumbered. The trial court held that the two properties would be held by the parties as tenants in common with an equal one-half interest, and that the former marital home would be possessed by Tim. Tim is to make monthly payments on the party's promissory note secured by the deed of trust against that property until said property is sold or partitioned. Additionally, he is to receive credit against Carol's interest in said property to the extent of one-half of all payments made by respondent attributable to: (a) all monthly payments on the note secured by the deed of trust; (b) real estate taxes; and (c) property insurance attributable to protection of all improvements and fixtures on said property against fire and other casualty. Each party is to pay one-half the property taxes attributable to the Nixa property.

Carol believes that because she was awarded custody of the children that she should be awarded the marital home until such time as the children reach the age of majority or are otherwise emancipated. She cites *Henderson v. Henderson*, 746 S.W.2d 99, 100 (Mo.App. 1988), as authority for this proposition. However, this argument is misplaced. While *Henderson* recognized the desirability of awarding the family home or the right to live therein for a reasonable period of time to the spouse having custody of the children, there was no mandate in that decision. However, this Court in *True v. True*, 762 S.W.2d 489, 490 (Mo.App.1988) held that unless there is some compelling reason it is improper to leave property vested jointly after a dissolution. It is imperative that absent some unusual circumstances a complete division of the marital property should be achieved in the dissolution decree. Here, no compelling reason exists for continuing a tenancy in common. Therefore, that portion of the decree is reversed and remanded with directions that the real property be sold and the net proceeds divided equally.

In regard to the personal property, Carol makes great argument of Tim's distribution from his AT & T savings plan of $18,000. It appears from the record that Tim took those funds to pay marital debt. This debt included, but was not limited to, $1,842 to use and make Carol's car payment current, $5,040 estimated tax and penalty, and approximately $5,824.42 for state and federal taxes that were due and owing. Additionally, he paid $3,302 down payment and taxes on a new pickup truck. This left a balance in the Springfield Telephone Company Credit Union account of approximately $3,000. It does not appear from the record that Tim squandered these funds but put them to good use to satisfy marital debt and to provide for his transportation needs. Therefore, we cannot quarrel with the trial court's distribution of the personal property.

## II.

Carol's second contention is that the trial court erred in awarding child support in the

amount of $448 per month in that the award erroneously applies the law and is not within the Missouri child support guidelines. We disagree.

 It is correct that the Missouri child support guidelines should be given substantial consideration in determining the amount of child support award. *Reese v. Reese*, 755 S.W.2d 437, 439 (Mo.App.1988). However, the determination of the proper amount to be paid by the father to the mother as custodial parent requires a balancing between the needs of the child and the ability of the father to pay, *Wynn v. Wynn*, 738 S.W.2d 915, 919 (Mo.App.1987).

In the case at bar, Tim was ordered to pay $224 every two weeks, or $448 per month as child support, plus health insurance and dental insurance. His base pay was $1,278 every two weeks. After federal and state withholdings, FICA and union dues, his net take home pay is approximately $912.30 per two weeks or $1,938.63 per month. When child support of $448 is subtracted only $1,453.30 is left to meet expenses of $1,538.12. Among those expenses are medical and dental care for the children as well as their insurance. It is reasonable that the judge gave Tim a credit for paying for life insurance on the children which the wife requested him to keep. It appears the guidelines provide that a gross monthly income of $2,769 (Tim's gross annual income divided by 12) is $625. The discrepancy between the guidelines and the court ordered child support, here, does not represent an abuse of discretion. Therefore, the second point is denied.

### III.

The final point raised on appeal is that the trial court erred in awarding $500 to Carol as a portion of her attorneys' fees. We again disagree.

The trial court is vested with broad discretion in awarding attorneys' fees in divorce actions and only when that discretion is abused should it be overturned. *Atwood v. Atwood*, 664 S.W.2d 673, 675 (Mo.App. 1984). The trial court was fully advised of the parties' incomes, assets and the time expended by the counsel for Carol. Additionally, the trial court is in a better position, having ruled on all the motions in the case, to judge the validity of the claim for attorneys' fees. There was never a hearing on the motion for temporary allowances and there is nothing in the legal file to reflect the reason that Mr. Gorham's trips to Carrollton were found by the judge to be unreasonable. This Court has no real basis for review of this issue based on the transcript provided on appeal because it does not contain the relevant information pertaining to factual basis on rulings for continuance. Therefore, the final point is also denied.

The judgment of the trial court is affirmed in part and reversed and remanded with directions relative to the real property.

All concur.