Subodh K. MEHRA, Defendant–
Appellant–Cross–
Respondent,

v.

Rachna MEHRA, Plaintiff–Respondent–
Cross–Appellant.

No. 73748.

Supreme Court of Missouri,
En Banc.

Nov. 19, 1991.

Mark S. Corman, Clayton, Christopher Karlen, St. Louis, Edward K. Fehlig, Clayton, for defendant-appellant-cross-respondent.

Robert F. Summers, Theresa Counts Burke, St. Louis, for plaintiff-respondent-cross-appellant.

RENDLEN, Judge.

In this dissolution proceeding, both husband (Subodh K. Mehra) and wife (Rachna

Mehra) appeal from the trial court's decree. The parties were married in India in 1973, and their two daughters, Shaila, now 16, and Anjali, now 8, were born in the United States. The parties are physicians, licensed to practice in Missouri, with a combined monthly income of $19,395.00 at the time of trial.

■ The trial court appointed the Honorable Franklin Ferriss as Master and accepted his recommended Findings of Fact and Conclusions of Law. We granted transfer from the Missouri Court of Appeals, Eastern District, to examine the application of the Missouri child support guidelines to monthly incomes in excess of $10,000. Applying the standards of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), we must sustain the trial court's decree unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Further, we defer to the factfinder's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree, disregarding all contrary evidence and inferences. *Wynn v. Wynn*, 738 S.W.2d 915, 918 (Mo.App.1987); *Ware v. Ware*, 647 S.W.2d 582, 583–84 (Mo.App.1983).

### Child Custody

■ Husband first contests the trial court's award of legal custody to the wife and temporary custody with visitation rights to him, contending the court should have awarded joint legal custody pursuant to § 452.375.3, RSMo Supp.1988. This subsection, added in 1988, reads as follows:

> The general assembly finds and declares that it is the public policy of this state to assure children frequent and meaningful contact with both parents after the parents have separated or dissolved their marriage, and that it is in the public interest to encourage parents to share decision-making rights and responsibilities of child-rearing. In order to effectuate this policy, the court shall determine the custody arrangement which will best assure that parents share such decision-making responsibility and authority and such frequent and meaningful contact between the child and each parent, as is indicated in *the best interests of the child under all the relevant circumstances* (emphasis supplied).

However, this amendment was not in effect at the time the petition in this case was filed on October 26, 1987, and is therefore inapplicable here. *In re Marriage of Ross*, 772 S.W.2d 890, 892 (Mo.App.1989).

■ Nonetheless, assuming *arguendo* the amendment is applicable, child custody must be determined in accordance with "the best interests of child," § 452.375.2, RSMo Supp.1988, *see also* § 452.375.2, RSMo 1986 (containing the same criterion), and we do not find the trial court's judgment erroneous in this respect. The statutes do not limit the discretion of the trial court to reject joint custody, and the court found that the wife has been "the primary influence in both daughters' lives" and that her parenting decisions often conflict with those of the husband. In his testimony husband admitted a difficulty in communicating with his wife regarding the children. Imperative to the best interests of the child in a joint custody arrangement are "[t]he commonality of beliefs concerning parental decisions and the ability of the parents to cooperate and function as a parental unit." *Massman v. Massman*, 749 S.W.2d 717, 720 (Mo.App.1988). "Unless [parental] guidance has some uniformity it may well be worse than no guidance at all." *Lipe v. Lipe*, 743 S.W.2d 601, 602 (Mo.App.1988). This first point is denied.[1]

### Child Support

■ We find merit, however, in husband's challenge to the trial court's child support award. The court based its award on the Missouri Child Support Guideline Schedule of Basic Child Support Obli-

---

1. Husband notes that Shaila, the elder daughter, moved in with him after trial, and this, of course, was not in evidence before the trial court. As we remand the cause for further proceedings, the trial court should review such allegations, and if true, determine the proper course as to custody and support in accordance with the directions given in this opinion.

gations as applied by the Circuit Court of St. Louis County. This schedule, based on the Income Shares Model developed by the National Center for State Courts, was prepared by the Missouri Child Support Guidelines Task Force, funded by the Missouri Bar Association Family Law Section and the Missouri Department of Social Services, and was first published at 735–736 S.W.2d Missouri Cases, p. XL, in 1987. Pursuant to the direction of the legislature, § 452.340.7, RSMo Supp.1989, the schedule has since been adopted as Form 14 of our Rules, coincident with Rule 88.01, on October 2, 1989, and made mandatory as of April 1, 1990. The schedule sets forth the amount of child support as a proportion of the combined gross monthly income of the parents. At $100 monthly income, the basic child support for two children is thirty-seven percent of income, and though with each $100 increase in monthly income, the amount of child support increases, the percentage ratio of "support-to-income" decreases steadily to 15.5 percent when it reaches $8400. For monthly incomes from $8400 through $10,000 the support percentage is 15.5 percent, and the schedule ends at the $10,000 monthly income level with $1,550 in child support for two children.[2] This case presents the important question of interpreting these guidelines when the parties have a monthly income in excess of $10,000.

█ The trial court, finding the parties' combined gross monthly income to be $19,395, made a straight line extrapolation of the 15.5 percent ratio and calculated the children's support at $3000 per month ($19,935 × .155 = $3,006.23), with husband to pay 65.6 percent of this amount and wife to pay the remainder. We interpret the schedule differently. Court-ordered child support, as provided by statute, is to be an amount "reasonable or necessary" for support of the child, § 452.340, RSMo 1986, "and not to provide an accumulation of capital." *Heins v. Heins,* 783 S.W.2d 481, 483 (Mo.App.1990), which must be balanced against the parents' ability to pay and the family's standard of living. *See Wynn v. Wynn,* 738 S.W.2d 915, 919 (Mo.App.1987); *Wiesbusch v. Deke,* 762 S.W.2d 521, 523 (Mo.App.1988) *Reed v. Reed,* 775 S.W.2d 326, 330 (Mo.App.1989); *Pursifull v. Pursifull,* 781 S.W.2d 262, 264 (Mo.App.1989); *In re Marriage of Cope,* 805 S.W.2d 303, 308 (Mo.App.1991); § 452.340(3), (4), and (6), RSMo 1986. Further statutory factors for consideration are "[t]he father's primary responsibility for support of his child," § 452.340(1), "[t]he financial resources of the child," § 452.340(2), and "[t]he physical and emotional condition of the child, and his educational needs." Section 452.340(5). The amounts indicated on the schedule are but a presumption of the proper level of support, given the monthly income of the parties, and we find the trial court's mode of extrapolation beyond the confines of the schedule unjustified in the absence of any specific finding that the $1550 figure is unjust or inappropriate. Further, the record does not reflect how the court determined husband must pay $800 per month towards the children's "special needs," which include private educational expenses of $1,133.33 per month. Accordingly, we remand the cause for fur-

2. The pattern of gradual steady reduction of child support as a percentage of monthly income is as follows:

| Monthly Income | % for Child Support | Change in % for Support |
|---|---|---|
| $100 | 37.0% | — |
| $1000 | 30.5% | 6.5 |
| $2000 | 24.7% | 5.8 |
| $3000 | 22.7% | 2.0 |
| $4000 | 21.0% | 1.7 |
| $5000 | 19.2% | 1.8 |
| $6000 | 18.0% | 1.2 |
| $7000 | 16.8% | 1.2 |
| $8000 | 15.8% | 1.0 |
| $9000 | 15.5% | 0.0 |
| $10,000 | 15.5% | 0.0 |

ther proceedings consistent with this opinion.[3]

### Valuation of Southside Medical Group, P.C. and Office Condominium

The parties founded Southside Medical Group, P.C., their medical practice, in 1981, and leased to the corporation an office condominium on Mackenzie Road. At the time of trial, husband held 90 shares of stock in Southside and wife held 10. Husband was awarded the condominium and all shares in Southside, but he complains the court erred in overvaluing the property thus awarded to him.

 Gerald Magruder, the wife's expert, testified regarding the value of the Southside medical practice, and the husband contends Magruder was incompetent to testify as to the value of the equipment. This contention is not well taken. Magruder testified he had visited Southside to examine the equipment in question and was familiar with the secondhand market for medical equipment, having valued used equipment in connection with the sale of medical practices. The qualifications of a witness to render an expert opinion lie within the trial court's discretion, *Tharp v. Oberhellman*, 527 S.W.2d 376, 379 (Mo. App.1975), and we find no abuse of discretion on the record here. Further, we do not find that the court's valuation of X-ray and computer equipment leased to the corporation by husband, based on Magruder's testimony is against the weight of the evidence or unsupported by substantial evidence.

 In valuing the Mackenzie Condominium, the trial court apparently accepted the $180,000 valuation, including "leasehold improvements," given in wife's First Amended Statement of Property, leaving a net equity of $28,000 in light of the $152,000 mortgage on the property. Husband contests this valuation, arguing the market value of the property is $125,000 with balance of $154,000 due on the mortgage, leaving no market value at all. Husband and wife, as owners of the property, were both competent to testify as to its value, *Schulze v. C & H Builders*, 761 S.W.2d 219, 223 (Mo.App.1988), and we are obliged to defer to the factfinder's determination of credibility, *Wynn v. Wynn*, 738 S.W.2d at 918, which weighed in favor of the wife.

Husband finally complains leasehold improvements were improperly counted in valuing both the condominium and the medical practice. The trial court awarded husband the condominium, "together with all leasehold improvements thereto," and set its fair market value at $180,000. In valuing the assets held by the medical practice, the court included $28,000 in "equipment and leasehold improvements," based on a balance sheet prepared by Magruder. A footnote to Magruder's "equipment and leasehold" figure, however, indicates that it does not include the condominium, and the following page of Magruder's report demonstrates that the full amount listed as "equipment and leasehold" was actually the value of equipment alone, thus the addition of the term "leasehold" appears to have been inadvertent both on Magruder's balance sheet and in the trial court's find-

**3.** Though our Rule 88.01 and Form 14 were not effective at the time the circuit court entered judgment on July 1, 1989, *see Mueller v. Mueller,* 782 S.W.2d 445, 448–49 (Mo.App.1990) (Rule 88.01 and § 452.340.7, RSMo Supp.1989, not retroactive), its decision was based on the same schedule and we find the principles enunciated above applicable in construing our Rule and the accompanying form. Rule 88.01 states that "[t]here is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded," and "[i]t is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is correct if the court or administrative agency enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate." Further, the concurring opinion of Covington, J., cites the statutory factors of § 452.340, RSMo Supp.1990. Section 452.340 was amended in respect to these factors in 1988, and that amendment is not applicable to this case, in which the petition was filed October 26, 1987. *In re Marriage of Ross,* 772 S.W.2d 890, 892 (Mo.App.1989).

ings. This did not result, however, in any improper valuation of the assets, as husband would have us believe, thus this point is denied.

### Tucker Property

■ The parties were partners with another couple in the 1812 Tucker Partnership, whose sole asset is a four-unit apartment building at 1812–1814 Tucker, owned and operated by the partnership. The trial court awarded the Mehra's partnership interest to husband, attributing to it a net monthly income of $205, but husband contends the operating expenses exceed the rental on the building, resulting in a net monthly loss of $542, thus the venture cannot possibly be income-producing. Wife counters that husband may claim a $6,231 tax benefit in depreciation on the property.

The trial court apparently derived the $205 income figure from the partnership balance sheet designating "owner withdrawals" of $3700 for the first nine months of 1988, which, divided by the couple's one-half interest in the partnership, results in a monthly quotient of $205.55. The balance sheet, however, does not account for the mortgage payments, though evidence of such payments was presented at trial.

The trial court apparently disbelieved husband's testimony and it is the exclusive province of that court to weigh the evidence. *Cole v. Plummer*, 661 S.W.2d 828 (Mo.App.1983). Because we are unable to determine from the record whether its judgment in this respect is supported by substantial evidence, we direct the court on remand to further examine this issue.

### Insurance Policies

■ Husband next charges error in the trial court's order to husband "as sole shareholder of [Southside Medical Group, P.C. to] cause [the] corporation to transfer" two insurance policies on his life to Rachna Mehra. Husband relies on cases such as *In re Marriage of Ward*, 659 S.W.2d 605, 607 (Mo.App.1983), where the court held:

The trial court's action in classifying the corporate assets as marital property, and dividing them between the parties, was reversible error. A marital dissolution decree may not purport to affect property of a corporation that is not a party to the litigation, even if the corporate stock is primarily or entirely owned by one of the parties to the dissolution action. The trial court was limited to a disposition of the *stock* of the corporation which was admitted by both parties to be marital property. The trial court has no jurisdiction to enter a decree dividing property that is not owned by either spouse. (Citations omitted.)

See also *Penn v. Penn*, 655 S.W.2d 631 (Mo.App.1983); *In re Marriage of Schulz*, 583 S.W.2d 735, 742 (Mo.App.1979); *V.M. v. L.M.*, 526 S.W.2d 947, 952 (Mo.App.1975). These cases may be distinguished, however, on the basis that here the trial court did not allocate the corporate assets themselves as marital property, but directed husband, as sole shareholder under the court's decree, to cause the corporation to transfer the two insurance policies on his life to Rachna Mehra.[4] Husband makes no showing this cannot be accomplished, and we conclude the trial court did not misapply the law in this regard. *Murphy v. Carron*, 536 S.W.2d at 32.

### Attorney's Fees

■ Husband finally contends the court erred in ordering him to pay wife $47,190 in attorney's fees ($42,558 to Schecter & Watkins, P.C. and $4,632 to Ebert, Meness & Kriegel), and further argues the court impermissibly awarded fees for wife's expert witnesses. The bill submitted by Schecter & Watkins was $58,-785.65, including $7503.50 in fees for the expert witnesses. The court's award for Schecter & Watkins, "as and for their attorney's fees and expenses incurred in respect of this matter," is less than the bill for legal services alone and does not by its terms include fees for the expert witness-

---

4. Compare *Secor v. Secor,* 790 S.W.2d 500, 502–503 (Mo.App.1990), where the parties agreed that property held by corporation of which husband was sole shareholder were marital assets and court treated the corporation as an alter ego of the parties.

es, thus we find husband's argument meritless. Further, an award of attorney's fees is within the discretion of the trial court, *Caruthers v. Caruthers*, 679 S.W.2d 358, 360 (Mo.App.1984), and we find no abuse of discretion from this record.

### Income Tax Dependents

 The trial court granted husband the right to claim the children as dependents for federal and state income tax purposes and ordered wife to execute a written declaration that she will not claim the children as dependents. Wife argues the court had no authority to order her to execute the form, but such an argument was specifically rejected in *Vohsen v. Vohsen*, 801 S.W.2d 789, 791–92 (Mo.App.1991), following the view expressed by a majority of jurisdictions that have spoken to the subject. Annotation, *Allocation of Dependency Exemption*, 77 A.L.R.4 786, 791 (1990). *Vohsen* noted the 1984 amendments to the Internal Revenue Code which provided the custodial parent is generally entitled to the income tax exemption for dependent children unless the custodial parent signs a written declaration not to claim the children as dependents and the declaration is attached to the noncustodial parent's tax return. The court noted the amendment "was made to eliminate the need for the Internal Revenue Service to resolve conflicts when both parents claimed a child as a dependent," and "when the parent cannot agree on who is to receive the exemption, it will be appropriate for our trial courts to determine this issue." 801 S.W.2d at 791–92. The court further observed that under the Internal Revenue Code, it is insufficient for the trial court simply to rule that the noncustodial parent take the exemption, and "to effectuate such an allocation, a trial court must order the custodial parent to annually sign the prescribed declaration, presently IRS Form 8332." *Id.* at 792. In accord with the majority view and persuaded by the rationale and ruling of *Vohsen*, we hold the trial court did not err in ordering wife to execute the waiver form.

### Property Valuation

 Following the parties' separation but prior to dissolution of their marriage, they sold their marital abode and divided the proceeds, each purchasing a new residence. Wife argues the trial court overvalued the furnishings in husband's home and undervalued the furnishings in her home. Giving deference to the trial judge, who is in the best position to assess the credibility of witnesses and apply proper values to the property, and we hold his valuations are supported by substantial evidence and not against the weight of the evidence. *Siegenthaler v. Siegenthaler*, 761 S.W.2d 262, 266 (Mo.App.1988).

 Wife next contends the court erred in undervaluing her medical practice. In calculating the value, the court explicitly refused to include a $25,000 unsecured debt to Boatmen's Bank, finding the loan was not required to be used in wife's medical practice. Wife argues her uncontradicted testimony shows the funds bought equipment needed for the practice. The trial court, however, was entitled to disregard even uncontradicted testimony, *Intertherm, Inc. v. Coronet Imperial Corp.*, 558 S.W.2d 344, 348 (Mo.App.1977), and we do not find its conclusion against the weight of the evidence.

### Division of Marital Property

 Wife claims the division of marital property "should have been fairly close to equal" because there was no marital misconduct to justify unequal distribution. The court is to make a just division of property after consideration of pertinent factors such as the contribution of each spouse to the acquisition of the marital property, the value of the property set apart to each spouse, and the economic circumstances of each spouse at the time the division of property is to become effective, § 452.330.1, RSMo 1986, but a "just" division need not be equal. *Siegenthaler*, 761 S.W.2d at 266; *Ware v. Ware*, 647 S.W.2d at 584. Regardless, adding to wife's calculations the equity in the parties'

**358**

homes, as well as the jewelry set apart to her under the court's decree, the division of assets is roughly equal, thus we find the point without merit.

### Loan to Anjusha Corporation

■ Finally, wife claims the court erred in failing to distribute as marital property $20,000 in loans repaid to husband from Anjusha Enterprises Limited, a corporation formed by the parties to obtain a franchise from Medicine Shoppe International and operate a pharmacy under that name. The parties were initially the sole shareholders of Anjusha, and the pharmacist managing the operation later obtained some shares. The couple advanced approximately $10,000 to Anjusha at its formation in September 1986, and husband testified that during the next two years following he lent approximately $43,000 in addition. Anjusha later obtained a loan of $93,000 from Boatmen's Bank, and husband received $20,000 from this amount as repayment for monies earlier advanced to the corporation, using the funds toward the down payment on his home. Wife contends the $43,000 was lent to the corporation from marital funds and that the $20,000 repayment, of which she was unaware until the time of trial, should have been distributed by the court as a marital asset. The trial court found, however, that husband had advanced the funds to the corporation and the repayment was not "squandered or secreted" by him. We cannot say this finding is unsupported by substantial evidence or is against the weight of the evidence.

We affirm the trial court's decree in all respects except its child support award and its attribution of a $205 net monthly income to the Tucker property, which we reverse. The cause is remanded for further proceedings to consider these matters and the situation as to the custody of Shaila in a manner consistent with this opinion.

HOLSTEIN and BENTON, JJ., and HIGGINS, Senior Judge, concur.

COVINGTON, J., concurs in part and concurs in result in part in separate opinion filed.

ROBERTSON, C.J., and BLACKMAR, J., concur in part and concur in result in part in opinion concurring in part and concurring in result in part of COVINGTON, J.

THOMAS, J., not participating because not a member of the Court when case was submitted.

COVINGTON, Judge, concurring in part and concurring in result in part.

I concur with the principal opinion with the exception of the issue of child support; on that issue I can concur only in result. With respect, I disagree with the principal opinion that the problem presented is one of "an interpretation of the schedule." The schedule is silent when the family income exceeds $10,000, thus does not apply. Furthermore, I fear that the effect of the language of the principal opinion may serve to deter trial courts from entering appropriate awards in excess of the scheduled amount.

The amount of support scheduled to be awarded upon a $10,000 monthly income is not a presumed ceiling beyond which any award is suspect in that it might "provide an accumulation of capital;" If applicable, the schedule serves only as a presumed minimum in this case. Since the schedule does not apply when the family income exceeds $10,000 per month, the trial court should then be guided by the considerations set forth in § 452.340, RSMo Supp. 1990. The relevant factors include:

(1) The financial needs and resources of the child;

(2) The financial resources and needs of the parents;

(3) The standard of living the child would have enjoyed had the marriage not been dissolved;

(4) The physical and emotional condition of the child, and his educational needs.

Section 452.340.1(1)–(4), RSMo Supp.1990.[1]

**1.** As the principal opinion notes, the statutory factors applicable in the present case were those in effect in 1987.