**In re the Marriage of Judith E. BOYLE and Larry Loyd Boyle.**

**Judith E. BOYLE, Petitioner–Respondent,**

v.

**Larry Loyd BOYLE, Respondent–Appellant.**

**No. 17691.**

Missouri Court of Appeals,
Southern District,
Division One.

April 16, 1992.

Donald Rhodes, Bloomfield, for appellant.

C.H. Parsons, Jr., Joe Z. Satterfield, Parsons, Mitchell, Wilson & Satterfield, P.C., Dexter, for respondent.

CROW, Judge.

Larry Loyd Boyle ("Larry") appeals from a decree dissolving his marriage to Judith E. Boyle ("Judith"). His sole point relied on avers the trial court abused its discretion in awarding Judith maintenance.

■ The point requires an account of the pertinent facts. In narrating them, we view the evidence and permissible inferences therefrom in the light most favorable to the decree and disregard all contrary evidence and inferences. *Mehra v. Mehra,* 819 S.W.2d 351, 353[2] (Mo. banc 1991).

Larry and Judith were married April 15, 1967. At that time, Judith had a daughter by a previous marriage: Lisa, born November 1, 1965. Larry adopted Lisa. Two children were born to Larry and Judith: Darren, born February 25, 1969, and Rachel, born July 26, 1975.

Larry and Judith separated in August, 1989. At time of trial (February 22, 1991), Lisa and Darren were emancipated.

Shortly after their marriage, Larry and Judith moved into a house in Bernie owned by Larry's mother. They lived there rent-free until they separated. Judith continued to occupy the house, rent-free, until November 30, 1990, when she moved to a house in Bloomfield owned by her father.

At time of trial, Judith's household consisted of herself, Darren,[1] Rachel, and two daughters of Lisa: Hayley and April, ages four and three, respectively. Hayley and April had begun living with Larry and Judith in February, 1988. Judith testified:

Q Did you ... get an order from the Juvenile Court of Stoddard County placing those children with you and Larry?

A Yes, sir.

. . . .

Q ... when you first got those children you and Larry were living together as husband and wife; is that correct?

A Yes, sir.

Q And I believe the children were placed in your home by the Juvenile Court of Stoddard County; is that correct?

A Yes, that's correct.

Q And I believe ... the order of custody was placing the children with both you and Larry?

A Yes, sir.

Q Did there come a time when that changed?

A Yes, sir, June of 1990.

The change referred to in the last question and answer is unexplained in the record on appeal.[2] However, Judith testified she still had "legal custody" of Hayley and April, and Larry testified he did not want Judith to "give up custody."

At time of trial, Judith was employed by "the Department of Agriculture, the ASCS office" in Bloomfield, where she had worked about 24 years. Her "gross salary per month" was $1,698; her "monthly take-home pay" was $1,168. Additionally, she was receiving $234 per month from the State of Missouri for Hayley and April, making her "total monthly net" $1,402.

Larry was employed by the Missouri State Highway Department at a "monthly gross salary" of $1,743. His employment provided "full hospitalization [benefits], $200 deductible." Larry had worked for the Highway Department nearly 17 years.

Judith testified her monthly expenses are: $225 rent to her father; $266 payment on a 1986 automobile awarded her by the decree; $225 utilities; $260 for a baby-sitter for Hayley and April; $90 payment on a note to a bank signed by her alone; $400 groceries; $100 gasoline and automobile maintenance; $40 for Rachel's lunches; $50 medical and dental expense; $200 for clothing, haircuts and miscellaneous; and $55 insurance. Total: $1,911.

Judith drives Rachel, Hayley and April from Bloomfield to Bernie each weekday. Rachel, a sophomore, attends high school in Bernie; the baby-sitter for Hayley and April resides at Bernie. After work, Judith returns to Bernie to pick up the trio. The two round trips total 60 miles daily.

Larry argues Judith could reduce her expenses by placing Rachel in school at Bloomfield and leaving Hayley and April with a baby-sitter there. However, Judith

---

**1.** Darren, although nearly 22 and emancipated, was unemployed. According to Larry, Darren does seasonal work.

**2.** The explanation may appear in "the court records ... pertaining to grandchildren." The trial court took judicial notice of the records, but the parties have not filed them with us.

testified Rachel ranks first in her class and believes she has a better chance for scholarships if she completes high school at Bernie. Moreover, Larry testified:

Q You're aware that Rachel is number one in her class there at Bernie; are you not?

A Yes, sir.

Q. It's also your desire that she continue to go to school in Bernie and hopefully become the salutatorian or valedictorian of her class; isn't it?

A You better believe it.

Q You don't want her coming up here to Bloomfield to school; do you?

A No, sir.

Larry does not dispute any of Judith's other expenses, but he points out that the $530 withheld each month from her gross wages includes an unknown amount to fund her retirement program. Judith correctly responds that the record is silent as to whether her participation in the program is voluntary or mandatory.

The trial court divided the marital property, assigned each party certain debts, and awarded Judith custody of Rachel. Larry was granted "reasonable rights of temporary custody and visitation" with Rachel, and was ordered to pay Judith child support of $250 per month for Rachel. No issue is raised in this appeal about any of those rulings.

The decree contains this finding:

[Judith] lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs and is unable to adequately support herself through appropriate employment.

Consistent with this finding, the trial court awarded Judith $150 per month maintenance.

■ Larry's point relied on reads:

The trial court abused its discretion in ordering [Larry] to pay [Judith] maintenance as [she] has sufficient property to provide for her reasonable needs, was employed at the time of trial and had been throughout the marriage and, as the evidence reflected, could and did support herself.

Larry reminds us that § 452.335.1, RSMo Supp.1988, provides:

... the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment....

Citing *Davolt v. Davolt,* 764 S.W.2d 497, 500 (Mo.App.1989), Larry asserts a trial court must find both of the above circumstances exist before awarding maintenance. Larry maintains Missouri cases have consistently held a wife is not entitled to maintenance in a dissolution proceeding where she has been employed throughout the marriage and the evidence demonstrates she can and does support herself. As authority for that proposition, Larry cites *Lipe v. Lipe,* 743 S.W.2d 601 (Mo.App. 1988); *Hahn v. Hahn,* 739 S.W.2d 763 (Mo. App.1987), and *Givens v. Givens,* 599 S.W.2d 204 (Mo.App.1980).

Each of those three cases is factually distinguishable from the instant case. In *Lipe,* the appellate court found the evidence demonstrated the wife "can and does support herself," and held the denial of maintenance was not an abuse of the trial court's discretion. 743 S.W.2d at 603[5]. Here, the evidence most favorable to the maintenance award shows that even with the $250 per month child support, Judith's disposable monthly income ($1,652) will fall $259 short of her monthly expenses ($1,911). Larry concedes none of the modest marital property awarded Judith is income-producing, and he does not contend she can obtain better-paying employment.

In *Hahn,* all the parties' children were emancipated and the wife was awarded a debt-free residence together with sundry cash assets. She held two college degrees and had tenured employment with a school district. She supported no dependents. 739 S.W.2d at 763–64. The appellate court held the wife had sufficient income and property to meet her reasonable needs, hence the trial court did not abuse its discretion in denying maintenance. *Id.* at 764.

In *Givens,* a childless ten-year marriage, the wife was awarded diamonds and jewelry, cash, the marital home, furniture, and an automobile. 599 S.W.2d at 205. Her annual expenses were less than half her annual income, and she conceded she could live on what she earned. *Id.* at 206. The appellate court held there was no basis for maintenance. *Id.* at 206[5].

The scope of review set forth in Rule 73.01(c), Missouri Rules of Civil Procedure, as construed by *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976), governs our review in appeals from decrees of dissolution of marriage. *Mehra,* 819 S.W.2d at 353[1]. We must affirm the decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.*

The only item in Judith's monthly expenses specifically attributable to the grandchildren is the $260 baby-sitter cost. However, the $234 Judith receives from the State pays all but $26 of that. As to Judith's other monthly expenses, the evidence does not show what portions are attributable to the grandchildren. It appears some expenses such as rent, utilities, car payment, note payment, Rachel's lunches, and insurance would be the same without the grandchildren. Consequently, we cannot declare Judith's disposable monthly income would be sufficient to meet her reasonable needs if she gave up the grandchildren.

■ Judith is not disqualified for maintenance merely because she is employed. *In re Marriage of Souter,* 700 S.W.2d 545, 546[2] (Mo.App.1985). There is ample evidence to support the trial court's finding that Judith's income is insufficient to meet her reasonable needs. She is not required to consume her meager assets in order to qualify for maintenance. *Souter,* 700 S.W.2d at 546; *In re Marriage of Arnold,* 632 S.W.2d 28, 29[4] (Mo.App.1982); *In re Marriage of Brewer,* 592 S.W.2d 529, 535[13] (Mo.App.1979).

As we understand Larry's brief, he does not argue he will be financially unable to meet his needs if he pays $150 per month maintenance. His contention is simply that Judith did not meet the requirements for maintenance.

Maintenance awards to working wives have been allowed where their earnings were insufficient to meet their reasonable needs. *Kacich v. Kacich,* 785 S.W.2d 606 (Mo.App.1990); *Goodwin v. Goodwin,* 746 S.W.2d 124 (Mo.App.1988); *Klenke v. Klenke,* 742 S.W.2d 621 (Mo.App.1987); *Fausett v. Fausett,* 661 S.W.2d 614 (Mo.App.1983). Such is the case here. The trial court did not err in finding Judith eligible for maintenance.

■ A trial court has broad discretion in determining the amount of maintenance, and an appellate court will not interfere absent an abuse of discretion. *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 66[8] (Mo. banc 1983).

Given the particular facts of this case and viewing the evidence in the light most favorable to the decree, we find no abuse of discretion in setting the maintenance at $150 per month. Larry's claim of error is denied and the decree of dissolution of marriage is affirmed.

PREWITT, P.J., and PARRISH, J., concur.