**M.L.H., by Mother and Next Friend, D.R.H., Plaintiff,**

**D.R.H., Individually, Respondent–Appellant,**

v.

**W.H.P., Appellant–Respondent.**

**Nos. WD 44192, WD 44249.**

Missouri Court of Appeals, Western District.

April 21, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 1992.

Application to Transfer Denied July 21, 1992.

Michael J. Mann, Kansas City, Guardian Ad Litem.

David T. Greis, Kansas City, for appellant-respondent.

Linda F. Dycus, Daniel L. Franco, Kansas City, for respondent-appellant.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

ULRICH, Judge.

D.R.H., (mother), in her individual capacity, and on behalf of her minor child, M.L.H., sued W.H.P. (father), the biological father of M.L.H. in a paternity action. Mother petitioned the court for declaration of paternity, sole custody of M.L.H., child support, payment for unreimbursed necessaries, and attorney fees. Father counterclaimed requesting that the court grant him reasonable visitation rights or joint custody of M.L.H. Father also requested that M.L.H.'s surname be changed to his surname. After hearing substantial evidence, the trial court ordered that mother be M.L.H.'s residential custodian with primary care, custody, and control of the child. Father was awarded joint legal custody of M.L.H. with the right to reasonable visitation with the child. The court found that mother needs, and that father has the ability to pay, $1,500 per month as reasonable child support. The court found that retention of mother's surname by M.L.H. was in the child's best interest and ordered that the child retain the mother's surname. Finally, the trial court ordered father to pay $17,000 for mother's reasonable attorney fees. Both parties appealed the trial court's judgment.

Father argues on appeal that the trial court erred by (I) refusing to admit into evidence father's deposition testimony; (II) ordering that M.L.H. retain his mother's surname; (III) requiring father to pay $17,000 for mother's attorney fees; and (IV) refusing to allow father more Christmas visitation time with M.L.H. and requiring father to return the child to mother's home by 7:30 p.m. Wednesday evenings during the school year. Mother contends for her appeal that the trial court erred by (A) awarding joint legal custody of M.L.H. to both parties; (B) limiting child support to $1,500 per month without expressly stating whether the court followed Rule 88.01 in its determination; and (C) overruling mother's motion to remove the guardian ad litem. Judgment is affirmed in part and reversed in part and the case is remanded with directions to enter an award of child support consistent with this opinion.

The parties to this appeal are the natural parents of M.L.H., who was born on Janu-

ary 28, 1987. Mother sued father to establish paternity, to acquire sole custody of M.L.H., to obtain child support from father, for payment of unreimbursed necessaries, and for attorney fees. Father initially denied paternity; however, after paternity was established, father admitted paternity and counterclaimed for joint legal and physical custody, equal division of the cost of rearing M.L.H., change of the child's surname, and visitation with M.L.H. three weekends a month of three days each, alternate holidays, and one continuous month in the summer.

The parties presented voluminous amounts of evidence at trial. The evidence established that mother is an attorney. Father earns approximately $108,000 per month, and mother earns $35,900 annually. Mother sought $4,000 per month in child support based on father's income.

Following introduction of the evidence, the trial court ordered joint legal custody of M.L.H. and limited father's participation in M.L.H.'s rearing to major decisions. The court also ordered that father shall have reasonable visitation rights with M.L.H., including but not limited to the following: alternate weekends; one evening visit per week beginning immediately after school until 7:30 p.m. during the school year and during the summer months from 5:00 p.m. until 8:00 p.m.; alternating holidays; and two fifteen-day periods, one in June and one in August of every year. The court refused to change M.L.H.'s surname, finding that such a change would not be in the child's best interest. The court awarded mother $1,500 per month in child support and required father to pay $17,000 for mother's attorney fees.

### Father's Appeal
#### I. Father's Deposition

■ Father raises for his first point of error on appeal the trial court's refusal to accept father's deposition testimony into evidence. Father offered his deposition to the trial court as a formal offer of proof as evidence of his parenting skills and as proof that he is a good father.

This point is without merit. Introduction into evidence of father's deposition testimony by father would violate Rule 57.07. Rule 57.07(a)(3) specifically provides that "[t]he deposition of any witness *who is not*

*present in court* may be used by any party for any purpose...." (emphasis added); *see also Lawton v. Jewish Hosp. of St. Louis,* 679 S.W.2d 370, 374 (Mo.App.1984). The rule provides that a witness' deposition may only be admitted into evidence if that witness is not present in court.[1] In the present appeal, father was present in the courtroom, thereby precluding introduction of his deposition testimony. *Id.* Therefore, the trial court properly refused to admit father's deposition into evidence. Point I is denied.

#### II. Mother's Surname

■ Father next contends that the trial court erred by refusing to change M.L.H.'s surname to father's. Father argues that the trial court's decision is erroneous because the court did not apply the appropriate "best interests of the minor child" standard when it made the decision and because the decision is not supported by substantial evidence. Review of the record discloses that this point is also without merit.

Certain factors should be considered by the trial court when contemplating changing a minor's name. *See R.K.–T.S. by V.T. v. R.S.,* 819 S.W.2d 749, 750 (Mo.App.1991). These factors include "the child's age, the potential embarrassment or discomfort the child would experience when his or her surname is different than the custodial parent, and how the name change will affect the child's relationship with his parents." *Id.* Applying these factors to the facts of this appeal demonstrates that the trial court's judgment is supported by substantial evidence. *Id.*

The evidence established that the child, born January 28, 1987, bore the name M.L.H. continuously from the date of his birth to the present date. The trial court received expert testimony that M.L.H. would suffer detrimental effects if his name were changed. The expert testified that changing the child's surname would cause the child to experience inconvenience and discomfort unnecessarily. Therefore, there is substantial evidence supporting the trial court's decision that retention of M.L.H.'s present surname is in the child's best interests. Father's second point is denied.

**1.** Rule 57.07(a) provides other instances when a deposition may be introduced into evidence, but they are inapplicable to this appeal.

### III. Mother's Attorney Fees

■ Father asserts for his third point on appeal that the trial court abused its discretion by requiring him to pay $17,000 for mother's attorney fees. Section 210.842, RSMo Supp.1990, expressly prescribes that the trial judge in paternity suits "may order reasonable fees for counsel ... to be paid by the parties in such proportions and at such times as determined by the trial court...."

In reviewing an award of attorney fees, appellate courts recognize that "[t]he trial court is vested with broad discretion in awarding attorneys' fees ... and only when that discretion is abused should it be overturned." *Reed v. Reed*, 775 S.W.2d 326, 330 (Mo.App.1989). A challenge to a trial judge's discretionary attorney fees' award is difficult to sustain because "[t]he trial judge is an expert on the reasonable value of legal services and is given wide latitude in the allocation of fees and costs." *S.R. v. S.M.R.*, 709 S.W.2d 910, 916 (Mo.App.1986). Furthermore, "[t]he trial court's ruling concerning attorney's fees is presumptively correct." *Brandt v. Brandt*, 794 S.W.2d 672, 674 (Mo.App.1990). Thus, father must prove that the attorney fees' award is so arbitrary and unreasonable that it shocks this court's sense of justice and indicates a lack of careful consideration by the trial court. *Potter v. Desloge*, 658 S.W.2d 83, 85 (Mo.App.1983).

Father argues that the trial judge abused its discretion in awarding attorney fees for numerous reasons. Father contends that these reasons, individually and collectively, mandate a reversal of the award of attorney fees. First, father asserts that mother's primary goal was to obtain attorney fees for herself. This purpose, father asserts, is improper and should preclude the attorney fees' award. Assuming arguendo that such purpose is improper, father's argument identifies a single statement made by mother's attorney, takes the statement out of context, and attempts to distort its meaning. Review of the statement discloses that generation of attorney fees was not the primary goal of the litigation. Instead, the goals pursued by mother were those awarded in the trial court's order.

■ Father next asserts that on at least one occasion the fees were deliberately inflated. The trial judge is an expert in determining what are reasonable attorney fees. *S.R. v. S.M.R.*, 709 S.W.2d at 916. The trial judge has the expertise and discretion to discern whether the requested fees were inflated. Mother requested attorney fees in the sum of $27,155.90. The trial judge awarded $17,000. Accordingly, this court can logically assume that any requested amount that may have been inflated was included in the unawarded portion of the fees. *Flach v. Flach*, 645 S.W.2d 718, 722 (Mo.App.1982).

■ Father also expostulates that the award of attorney fees was improper because mother, as a licensed attorney, should have performed work on her own case, thereby reducing the amount of fees incurred. Father cites no case law or statutory authority which imposes upon mother an affirmative duty to reduce attorney fees by performing work herself.

■ Father next challenges the attorney fees' award by claiming that most of the fees were generated by mother's own improper actions. Specifically, father cites to mother's refusal to answer discovery requests and mother's failure to comply with a court order granting visitation to father. The unawarded claimed attorney fees totaled more than $10,000. Again, this court can logically assume that the trial court's denial of the total sum requested included denial of claimed fees unnecessarily generated. *Id.*

■ Father next submits that the fees charged in the present appeal were grossly inflated considering the outcome of the trial. This argument ignores the long duration of trial, the voluminous amount of evidence in the record, and the favorable results achieved by mother. The trial judge, as an expert to the necessity, reasonableness, and value of attorney fees, is in the best position to determine whether such fees were appropriate considering the circumstances and outcome of the trial.

*May v. May*, 801 S.W.2d 728, 734 (Mo.App. 1990).

■ Father also contends that mother's attorney fees are improper because she charged different fee rates for time spent in court when compared to time spent elsewhere. When determining the amount of attorney fees to award, "[t]he trial court is not bound by the number of hours of work performed by counsel or by the hourly charges for that work." *S.R. v. S.M.R.*, 709 S.W.2d at 916. Father has failed to demonstrate that the trial judge has abused his discretion. *Id.*

■ Father, as his next argument, tenuously claims that because mother intentionally became pregnant, any attorney fees generated by mother were the result of her own misdoings and, thus, should preclude any attorney fees' award. The record demonstrates no competent evidence to support this charge by father.

Finally, father asseverates that the trial court abused its discretion in awarding attorney fees by refusing to accept into evidence father's deposition, which is relevant to the attorney fees' issue. The inadmissibility of this deposition testimony was addressed and resolved in father's first point on appeal.

Father has failed to prove that the trial court abused its discretion in awarding mother her attorney fees. *May*, 801 S.W.2d at 734. Father's third point is denied.

## IV. Child Visitation

■ Father argues for his final point on appeal that the trial court abused its discretion by refusing to allow him more Christmas visitation time with M.L.H., and by requiring father to return M.L.H. to mother's home at 7:30 p.m. on Wednesday evenings during the school year. Father contends that the trial court erred because the record is devoid of evidence demonstrating that these restrictions are in M.L.H.'s best interest.

Father avers that the trial court erred when it restricted father's visitation with him over Christmas holidays to Christmas Eve because the decision prevents M.L.H. from joining father and M.L.H.'s half brothers on Christmas vacation trips. Father argues that if M.L.H. would be able to accompany him on these trips, M.L.H. could maintain and develop a close relationship with father and M.L.H.'s half-brothers. Father asserts that by depriving M.L.H. of the experiences of travelling with him and his sons, the trial court's ruling impairs, rather than enhances, the public policy of encouraging substantial contact between noncustodial parents and their children. Furthermore, father notes that mother recommended to the trial court that father should have five days with M.L.H. in December, from December 28 to January 1, every year "[b]ecause I [mother] realize that [father] does take trips with his sons, or he has mentioned to me the fact that he does, and this would allow [father] to have a chance to take [M.L.H.] on one of those trips during the Christmas holiday...."

Father also challenges the trial court's order restricting his Wednesday night visitation with M.L.H. during the school year to 7:30 p.m. Father argues that his profession prevents him from leaving work in the middle of the day to acquire M.L.H. from school. Thus, father contends, he is compelled to obtain M.L.H. at mother's home in Johnson County, Kansas, around 5:30 p.m., drive back to mid-town Kansas City, spend a brief amount of time with M.L.H., and then must quickly return M.L.H. to mother's home, a twenty-minute drive, thereby resulting in little quality time between the two. Father argues that, instead of this arrangement, he should be allowed to enjoy an overnight visitation on Wednesdays with M.L.H., which would provide more meaningful time between the two.

■ Deference must be given to the trial court's assessment of what serves the best interest of the child. *Pulliam v. Sutton*, 728 S.W.2d 252, 254 (Mo.App.1987). The trial court's "judgment should be reversed only if it lacks substantial evidence to support it or is against the weight of the evidence or erroneously declares or applies the law." *Id.*

The record contains substantial evidence to support the trial court's decision. Father is provided considerable visitation time with M.L.H. The order provides father visitation with M.L.H. on alternating weekends, every Wednesday until 7:30 p.m. during the school year and until 8:00 p.m. during the summer school-vacation months, two fifteen-day summer visitation periods with M.L.H., one in June and one in August of each year, alternating holidays, and on each Christmas Eve from 10:00 a.m. to 10:00 p.m. The visitation periods allotted by the trial court facilitates opportunity for father and son to develop close ties with each other and for M.L.H. to bond with his half-brothers. Additionally, the order specifies that father "shall have the right of reasonable and specific visitation with the minor child, including but not limited to ... the time specified in the order." Thus, M.L.H.'s parents can arrange for a more extended father and son visitation during the Christmas holidays and on Wednesday night visitations. Therefore, the trial court's order regarding father's visitation schedule is sufficiently supported by the evidence. Father's last point on appeal is denied.

### M.L.H.'s and Mother's Appeal

M.L.H. and mother cross-appeal from the trial court's judgment, claiming three points of error. They claim that (A) the trial court erred in placing M.L.H. in the joint legal custody of the parents; (B) the award of child support is insufficient, and (C) the trial court erred in denying their motion to remove the guardian ad litem.

Father challenges mother's standing to file an appeal. Father claims that the cross-appeal is invalid because mother filed the appeal solely in her individual capacity, and not on behalf of M.L.H. However, review of the Notice of Cross–Appeal discloses that the cross-appellants are M.L.H. and mother. This court has jurisdiction to review the cross-appeal.

### A. *Joint Custody*

Mother argues for her first point that the trial court erred in placing M.L.H. in the joint legal custody of his parents.[2] Mother asserts that she and father are unable to cooperate and function as a parental unit, which is detrimental to the best interests of M.L.H. The trial court's order states:

> [T]hat it would be in the best interest of the minor child ... for the parties to share joint legal custody of the child as apportioned by the Court below and ... [mother] shall have the primary care, custody and control of the child and be the residential custodian.... Said joint legal custody shall be limited to discussions of the major decisions in the child's life such as choosing schools and making decisions regarding serious illnesses.

Mother claims that this award of joint legal custody is erroneous.

The trial court's judgment must be sustained if substantial evidence supports the order, if the judgment is not against the weight of the evidence, and if the decision does not erroneously declare or apply the law. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). Great deference is bestowed upon the trial judge to determine credibility. *Id.* Appellate courts view the evidence, and any reasonable inference from the evidence, in the light most favorable to the decree, disregarding all contrary evidence. *Id.*

Mother argues that the great weight of the evidence demonstrates she and father cannot function as a parental unit and that the joint legal custody arrangement is not in the best interests of M.L.H. Mother cites Dr. Edward Christopherson's testimony that the continuing conflict between the natural parents is detrimental to M.L.H. Mother also asserts there is corroborating evidence that the parents are consistently unable to cooperate with one another with regard to M.L.H.

Mother cites several cases as support for her proposition that joint legal custody is inappropriate where the parents are unable

**2.** Mother brings this appeal in both her individual capacity and in her representative capacity. The cross-appellants will be referenced only as "mother."

to work together as equal partners in rearing their child. *See Brisco v. Brisco,* 713 S.W.2d 586 (Mo.App.1986); *In re Marriage of Dempster,* 809 S.W.2d 450 (Mo.App. 1991). This court in *Brisco* held that a joint custody plan is not in the child's best interest when evidence is absent that the parents have the emotional ability to cooperate with each other as equal partners in the care of the child. 713 S.W.2d at 590.

The facts in *Dempster* are more analogous to the present appeal. The court in *Dempster* received evidence that the parents of three daughters were physically and verbally abusive to each other. 809 S.W.2d at 454–55. However, the parents were able to agree on certain important aspects regarding the children's rearing. *Id.* at 455. The *Dempster* court upheld the joint custody award, stating that "[w]hile it would be foolish to assume all future contacts between the parties will be harmonious and free of acrimony, we cannot say the record is bare of substantial evidence that the parties have no ability to deal with each other about the rearing of [the children.]" *Id.*

The appeal *sub judice* reveals antagonism and acrimony between the two parties. However, evidence was presented that the parties can agree on decisions that are in M.L.H.'s best interests. The parents have agreed on certain living arrangements for M.L.H., both parties have attended birthday celebrations for M.L.H., mother has suggested that M.L.H. be with father for a five-day period so M.L.H. can spend time with father and his other sons, and there is substantial evidence that each parent loves M.L.H. and has the ability to take care of the child. Sufficient evidence demonstrates that the parties can compromise and repress their chronic differences when M.L.H.'s best interests are concerned. Therefore, mother's first point is denied.

**B.   *Child Support***

Mother next challenges the child support award. Mother argues that the trial court abused its discretion by not considering all of the relevant child support factors. The trial court found that mother needs child support to adequately support the parties' child and that father has the ability to pay to mother $1,500 per month as reasonable child support.

Rule 88.01 provides the relevant factors to be considered when awarding child support.[3] Rule 88.01 is applicable to child support awards in paternity actions. Rule 88.01 prescribes that "[t]here is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded *in any judicial ... proceeding for ... child support."* (Emphasis added.)

Civil Procedure Form No. 14 specifies that the rebuttable presumption for child support for a child whose parents earn $10,000 per month is $1,000 per month. However, father and mother earn considerably more than $10,000 per month. The appropriate child support award for a child whose parents earn more than $10,000 per month was recently resolved by the Missouri Supreme Court. *Mehra v. Mehra,* 819 S.W.2d 351 (Mo. banc 1991). The Supreme Court determined that the figures in Form No. 14 are rebuttably presumed to be the maximum amount the trial court can award for child support. *Id.* at 354. In *Mehra,* the trial court determined $3,000 per month child support to be the proper amount for two children whose parents earn more than $10,000 per month. *Id.* The trial court made a straight line extrapolation of the 15.5 percent ratio identified in Civil Procedure Form No. 14, and then calculated that percentage ratio by the amount the parents earned. The Supreme Court reversed the trial court's finding and held that

**3.**   The factors listed in Rule 88.01 are:

(a) the financial resources and needs of the child;
(b) the financial resources and needs of the parents;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;
(d) the physical and emotional condition of the child;  and
(e) the educational needs of the child.

[t]he amounts indicated on the schedule are but a presumption of the proper level of support, given the monthly income of the parties, and we find the trial court's mode of extrapolation beyond the confines of the schedule unjustified in the absence of any specific finding that the $1,550 [for the two children] is unjust or inappropriate.

*Id.* Thus, the *Mehra* court remanded the cause to the trial court for a specific determination of whether the $1,550 per month figure identified in the schedule is unjust or inappropriate. *Id.* at 354–55.

Applying the principle pronounced in *Mehra,* the $1,500 child support award is remanded to the trial court. *Id.* This child support obligation is in excess of the schedule's $1,000 per month figure. *See* Civil Procedure Form No. 14. Recognizing that the schedule is a rebuttable presumption, the trial court is directed to either award $1,000 per month pursuant to the schedule or, alternatively, make a specific finding that the amount calculated under the guidelines of Civil Procedure Form No. 14 is unjust or inappropriate based on facts presented at trial and, then, to enter the appropriate child support award.

### C. *Guardian ad Litem*

■ Mother argues for her final point that the trial court erred in refusing to grant her motion to remove the guardian ad litem. Mother contends that a potential conflict in interest exists regarding the guardian ad litem, the guardian's duties, and the guardian's business relationship with father. The guardian ad litem rents office space in a building owned by father. Mother posits that the guardian ad litem's neutrality is compromised by his tenant/landlord relationship with father.

The trial court properly refused to grant mother's motion to remove the guardian ad litem. A landlord/tenant relationship in a professional capacity is insufficient to challenge the neutrality of a guardian ad litem absent additional relevant evidence. Mother failed to demonstrate any objective facts which establish that the guardian ad li-

tem's neutrality has been compromised. Mother's last point is denied.

The judgment is affirmed in all respects except for the trial court's child support award. The cause is remanded to the trial court for further proceedings consistent with this opinion. All motions filed with this court are denied.

All concur.