Susan E. SCHUBERT, et al.,
Plaintiff/Respondent,

v.

Andrew M. TOLIVAR,
Defendant/Appellant.

No. 66799.

Missouri Court of Appeals,
Eastern District, Division Two.

Sept. 19, 1995.

Charles E. Stine, Jr., Hannibal, for appellant.

David C. Mobley, Brisoe & Mobley, New London, for respondent.

PUDLOWSKI, Judge.

This is an appeal from the trial court's judgment of custody and child support in favor of respondent Susan Schubert, mother of the infant. Appellant raises six points of error concerning the award of custody, the amount of child support imposed and the surname which the child will bear. We affirm the trial court's decree in all respects save the amount of child support.

The facts of this case are free from dispute. Respondent and appellant were employed at the U.S. Post Office in Hannibal when a liaison blossomed between them. Their trysts begat the child. The baby was born out of wedlock on August 2, 1991. Respondent undertook the responsibility of raising the child single-handedly, and did not seek financial assistance from appellant through legal recourse until some eighteen months after the child's birth. Paternity was stipulated by the parties.

■ Appellant did not request that the trial court memorialize its findings of fact and conclusions of law. Where no findings of fact have been issued, all controverted facts are treated as if found in accordance with the result reached. *Braeshire Condominium Board of Managers v. Brinkmeyer*, 841 S.W.2d 217, 219 (Mo.App.E.D.1992).

Accordingly, the portrait that emerges from the trial testimony is one of a mother determined to raise her child independently, and a father whose paternal instincts awakened slowly, at best. Appellant was, however, willing to lend some financial assistance to his child before any such legal duty was imposed or recognized.

■ Appellant's first point on appeal is that the trial court erred in awarding custody to respondent because such a custodial arrangement is not in the best interests of the child. In bench trials, trial court rulings are sustained on appeal unless they lack substantial evidentiary support, are against the weight of the evidence, or erroneously declare or apply the law. *Gismegian v. Gismegian*, 849 S.W.2d 201 (Mo.App.E.D.1993). Moreover, because of the unique opportunity the trial judge has in evaluating questions of witness character and sincerity, his award of child custody is presumptively in the child's best interests. *Gismegian*, at 202.

■ The trial transcript provides scant basis for appellant's assertion that the custody award is not in the child's best interest. The facts that the mother has retained numerous babysitters to look after the child while she is absent and that the mother has undergone treatment for occasional depression do not undermine the mother's parental fitness. The facts surrounding the infant's mishap with its high-chair are ambiguous and certainly will not support a reversal on this issue. The trial court's award of custody is affirmed.

■ Appellant asserts that the trial court erred in failing to order the child's surname changed from Schubert to Tolivar. Appellant bore the burden of proving that such a name change was in the child's best interest. However, appellant adduced no evidence on this issue at trial. The law does not presume it is in a child's best interest to carry the father's surname. *See B.L.W., ex rel. Ellen K. v. Wollweber*, 823 S.W.2d 119, 122 (Mo. App.1992). The trial court's denial of the petition for name change is affirmed.

The remainder of appellant's assertions of error are directed to the trial court's order of child support. The support award was based on V.A.M.S. § 452.340, the worksheets completed by the parties pursuant to Missouri Rule of Civil Procedure Form 14, and the child support guidelines appended to Form 14. With its calculus informed by these provisions, the trial court imposed a monthly payment of $540.00 on appellant, who has a monthly income of $4166.00. Appellant

seeks a reduction in this amount on a number of theories.

■ Appellant was awarded custody of the child for two weeks in each of the summer months of June, July and August. He contends that, because he will be supporting the child directly during those periods, the court-ordered payments for those months should be abated accordingly. Whatever normative force this reasoning may contain necessarily gives way to legislative command. Section 452.340.2 RSMo permits abatement where an obligor-parent is entrusted with the child's care voluntarily by the custodial parent for a period of at least 30 consecutive days. Here, appellant never has custody for more than 14 consecutive days, and such custody is pursuant to court order (i.e., it is not "voluntary" on the part of the mother). By specifying the circumstances under which a child support obligation will abate, the legislature has impliedly forbidden abatement under all other circumstances. Thus, the trial court's denial of abatement is affirmed.

■ Appellant also complains that he should not be compelled to pay support retroactively for the period dating from the child's birth to the date judgement was entered. Appellant asserts that respondent renounced her right to support during this period, and that such renunciation enables appellant to invoke the equitable doctrine of "waiver by acquiescence."

As a preliminary matter, we note that the statements made by respondent upon which appellant premises his waiver theory are at best ambiguous. However, assuming arguendo that respondent did disavow her right to child support payments prior to filing her lawsuit, the waiver by acquiescence doctrine is nonetheless inapplicable to this case. The cases expounding this doctrine fall into two categories: 1) where the party invoking the doctrine has relied to his detriment on the reasonable belief that the party with a right to support has expressly renounced that right, or 2) where there has been an express agreement between the obligor and the obligee to terminate a court decreed obligation. In either set of circumstances, some injustice that will befall the obligor absent invocation of the waiver doctrine is a necessary predicate.

In the instant case, appellant testified that respondent's statement that she did not want financial assistance from appellant constituted an express agreement. Appellant misconceives the doctrine. To begin with, the trial court may accept or reject all, part or none of the testimony of any witness and we will defer to the court's assessment as to whether or not respondent asserted that she did not want any financial assistance. Secondly, because there had never been an express agreement regarding the amount of support owed, there was no sum certain owed by appellant for respondent to waive. In all cases where the waiver by acquiescence doctrine has been employed, a sum certain was involved. *Grommet v. Grommet,* 714 S.W.2d 747 (Mo.App.1986).

It should be noted additionally that the necessary antecedent finding of injustice to the obligor (absent waiver) is not present here. We have reviewed the transcript and we could not find any indicia of injustice incurred by the appellant. He acknowledged that he was the father and was willing to support the child. The trial court's award of retroactive support dating from the child's birth to the filing of the lawsuit is affirmed.

■ New child support guidelines went into effect April 1, 1994, approximately two and one half years after the child's birth. In calculating the amount of support owed, the trial judge applied the new, April 1994, guidelines. Use of the new guidelines yields a higher arrearage amount than the prior guidelines. Appellant thus claims error in the court's use of the guidelines in the calculation of the amount of support owed for the period from the child's birth to the effective date of the new guidelines as a retrospective application of a statute, in violation of the Missouri Constitution, Article I, section 13.

Appellant argues that application of the April, 1994 guidelines to child support owed

prior to that date creates a new obligation with respect to events already past, and is, therefore, invalid as retrospective. We agree. In *Murphy v. Limpp,* 147 S.W.2d 420 (Mo.1941), the Supreme Court clearly stated that: "Every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already passed, must be deemed retrospective."

The cases cited by respondent in support of the trial court's ruling are not applicable. In *Turner v. Turner,* 812 S.W.2d 572 (Mo.App.1991), a mother sought an increase in child support. Though the case was heard and decided prior to April 1, 1990, (the effective date of the mandatory provisions of Rule 88.01), we stated that "the trial court had the option to follow the new Rule 88.01 or to determine in its discretion the appropriate amount of child support according to the evidence." Thus, the trial court's adherence to an executory rule was held proper. Here the question is whether the law in effect at the time of judgement should operate on a financial obligation incurred before the law's effective date, so *Turner* has no application. Nor is respondent's citation of *Davis v. Helton,* 796 S.W.2d 409 (Mo.App.1990) determinative of the present case. *Davis* involved the modification of an existing support decree in conformance with a new law—not the carrying back of a new law to pre-effective date events, as is the case here.

The trial court's use of the April, 1994 amended guidelines for calculation of support arrearage accruing prior to that date was an erroneous application of the law. We reverse with respect to that ruling and remand with instructions to re-calculate the relevant portion using the guidelines in effect at the time the obligation was incurred.

■ Finally, appellant contends that the amount of his income included by the trial court in its support computation was incorrect. Appellant owns seven rental properties which yield gross receipts of $24,724.00 annually. Income from rental properties is, of course, income considered by the trial court in fashioning a child support decree. Civil Procedure Form 14 also allows for the exclusion of "ordinary and necessary" expenses from gross income.

The trial court, accordingly, deducted $10,585.00 from appellant's gross annual receipts, the lion's share of which was presumably costs associated with the upkeep of the property. In addition, appellant has mortgages on his properties, and while the interest payments on these mortgages were deducted by the trial court, the principal payments were not. Nor did the trial court deduct a depreciation amount from the rental income, and appellant asserts that the failure to exclude payments on the mortgage principal, as well as a reasonable amount for depreciation, was error. For the reasons that follow, we disagree.

Appellant argues that the principal payments on his mortgage are necessary for the generation of the rental income. Respondent counters that the principal mortgage payments build appellant's equity in his real estate, so that even though payment of the mortgage is a condition precedent to collection of rental income, deduction of these payments would effectively allow appellant to accumulate assets (i.e., equity in the real estate) with income not included in the child support calculus. Appellant retorts that the equity accumulated in his real estate *is* taken into account in the formulation of the support order, because it is an asset listed on the financial statement he filed with the trial court.

Because appellant failed to request the legal findings of the trial judge, we assume that the trial judgment was made in accordance with the law. At one time, consideration of assets as well as income was required of trial courts in calculating child support. *See B__ v. B__,* 673 S.W.2d 819 (Mo.App.1984). However, the child support guidelines enumerated in Form 14 are now presumptively correct in all child support cases and the guidelines contemplate a calcu-

lation based solely on the *income* of the parties.

It is, therefore, appropriate for us to presume that the trial court correctly applied the guidelines propounded in Form 14 and that it based its support award on the incomes of the parties and not their assets. Appellant will not be permitted to exclude income, even that which is consumed by principal mortgage payments, which builds assets not considered in formulating the support order. Under appellant's reasoning, he could shield most or all of his income by investing in real estate; this is clearly impermissible.

 As regards the trial court's refusal to exclude a depreciation allowance from appellant's rental income, we note that the relevant statutory language is permissive rather than mandatory: "the court *may* exclude from ordinary and necessary expenses amounts for depreciation expenses...." Interpretive gymnastics are not required to find this determination vested in the discretion of the trial court, and such a finding comports with our traditional deference to trial courts in child support cases. We affirm the trial court's refusal to exclude appellant's principal mortgage payments and a depreciation allowance from his income.

This case is affirmed in part, reversed in part and remanded to the trial court for recalculation of appellant's past due child support obligation consistent with this opinion.

SMITH, P.J., and WHITE, J., concur.