Brian David BROWN, Appellant,

v.

Nicole SHANNAHAN,
Respondent/Cross–
Appellant.

No. ED 83007.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 10, 2004.

M. Zane Yates, Clayton, MO, for appellant.

Robert N. Hamilton, Jennifer R. Piper, St. Louis, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

Father and Mother cross-appeal the judgment declaring Father to be the father of the minor child Cole Shannahan, ("Son"), awarding joint legal custody, awarding Mother primary physical custody with specified visitation by Father, awarding child support to Mother, denying Mother's claim for necessaries and birthing expenses and changing the child's surname to Father's. We affirm in part and reverse and remand in part.

Mother and Father had a ten-month relationship that resulted in the birth of

Son. Mother moved into Father's residence when she learned she was pregnant and remained with him until Son was three months old. During that time Mother worked as a special education teacher and Father worked as a mortgage broker. Mother testified that the two had an agreement that Father would pay the shelter costs and necessaries for Mother during her pregnancy. Son was born July 25, 2001. There is conflicting testimony as to why Father was not at the birth. Both parents testified that they separated in August for about a week. After the separation, Mother moved back into Father's residence and the couple attended some counseling sessions to try to maintain the relationship. Father began a paternity action in September but Mother was never served. Mother testified she knew nothing of that paternity action.

Mother testified that she was not aware that Father was on probation for his second DWI until October when she talked to Father's probation officer. Mother testified that the conversation with the probation officer caused her to doubt Father's ability to appropriately parent Son and she decided to move to Virginia with him to prohibit Father from interacting with Son. She quit her Missouri job, applied for a teacher's license in Virginia and moved to Virginia in early November, 2001. She lived with her brother in Virginia until she was able to set up her own living arrangements. She testified she had no intention of letting Father know where she was.

Father claimed Mother left because she was insanely jealous of Father's first child by another encounter. He testified that Mother knew all along that Father was on probation because she drove him everywhere. He further testified that Mother had vowed to make his visitation with his daughter from the previous relationship as miserable as possible. Father testified that Mother was forcing him to choose between his two children. It was at that point that he told her that she would either need to accept his daughter's visits or find a new place to live. Father ultimately found out where Mother was living. On March 1, 2002, Mother was served with notice that Father had filed action to establish paternity and obtain sole custody of Son.

In its judgment the court established the parent-child relationship between Father and Son, changed Son's surname to that of Father's, awarded Mother primary physical custody in Virginia but awarded joint legal custody, established a visitation schedule and awarded Mother $497.00 child support per month.

■ Father raises three points on appeal. Father's first point asserts the court erred in allowing Mother to relocate to Virginia. Father contends that section 452.377 [1] governs the relocation of children and that the court did not follow that statute when making its decision. Section 452.377 provides for modification of *existing* custody or visitation arrangements. The language of the statute refers to "any party entitled to custody or visitation of the child" and "revised schedules of custody or visitation." Section 452.377(2). In this case, the parents were not married and paternity was not established at the time of Mother's relocation to Virginia. Thus, Father had no legal rights until the judgment establishing his paternity was entered. Mother's voluntary relocation prior to Father's initiation of the instant proceeding did not require court approval. Point denied.

■ In his second point, Father alleges the court erred in awarding physical custo-

1. All statutory references are to RSMo 2000 unless otherwise noted.

dy to Mother because it did not make written findings of the factors listed in section 452.375.2. Father's third point and final point alleges the court's custody decision was against the weight of the evidence. We decline to review these points because Father's brief does not contain any page references to the transcript or the legal file either in the statement of facts or in the argument for these points [2] as required by Rule 84.04(i). As the court observed in *McCormick v. Carmen Schell Const. Co.,* 97 S.W.3d 497, 505 (Mo.App. 2002), this requirement is mandatory and essential for the effective functioning of appellate courts, which cannot spend time searching the record to determine if factual assertions are supported by the record. This would effectively require the court to act as an advocate for the non-complying party, a role which we expressly decline. Accordingly, we decline review of Father's second and third points.[3] *Lombardo v. Lombardo,* 120 S.W.3d 232, 246–47 (Mo. App.2003).

■ Mother presents four points in her cross-appeal. In her first point, she contends that the award of joint custody is against the weight of the evidence. We will affirm the trial court's custody determination unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Besancenez v. Rogers,* 100 S.W.3d 118, 122 (Mo.App.2003).

■ Preference for joint custody is not that of forced joint custody in order to induce parents to find common ground, but it is a preference in favor of parents who show willingness and ability to share the rights and responsibilities of child-rearing even after they have dissolved their relationship. *J.L.S. v. D.K.S.,* 943 S.W.2d 766, 774 (Mo.App.1997). "Joint legal custody was not designed to insure that a parent maintains his or her relationship with the child, but was designed to facilitate the best interest of the child by allowing both parents to share in the decision making process." *Id.* Imperative to the best interests of the child in a joint custody arrangement are the commonality of beliefs concerning parental decisions and the ability of parents to cooperate and function as a parental unit. *Mehra v. Mehra,* 819 S.W.2d 351, 353 (Mo. banc 1991). If the parties are unable to communicate or cooperate and cannot make shared decisions concerning their children's welfare, joint legal custody is inappropriate. *McCauley v. Schenkel,* 977 S.W.2d 45, 50 (Mo.App. 1998).

The parents in this case have not communicated regarding their Son or any other matter for thirteen months. Mother testified that she would not have initiated contact with Father had it not been for the court summons. Additionally, Father made no attempt to support or visit Son once he found Son's address. The court's stated purpose in ordering joint custody in this case was to ensure Father's continued relationship with Son. The order states:

Due to the short nature of the relationship of the parties, the contentious nature of their current relationship, and the age of the child it is difficult to determine if the parties agree on important issues concerning the minor child.

---

**2.** Father's argument following his third point does contain one reference to the transcript to support an assertion that he testified that he believed a relationship between Mother and Son was important and necessary and that he would encourage frequent and meaningful contact if he was awarded custody. That testimony, standing alone, is insufficient to support a claim that the custody award was against the weight of the evidence.

**3.** Mother's motion to strike Father's brief is denied as moot.

However, to grant Mother sole legal custody would serve only to exclude Father from any meaningful participation in major decisions in the minor child's life and would not be in the minor child's best interests.

The order granting joint legal custody is not supported by substantial evidence. Mother's first point is granted. On remand, the trial court is directed to grant sole legal custody to Mother.

In her second point, Mother claims the court's decision to accept Father's child support calculation sheet, Civil Procedure Form No. 14 ("Form 14"), which listed his annual income as $40,000 was against the weight of the evidence. The trial court's judgment must be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). An award of child support is within the sound discretion of the trial court. *Bullard v. Bullard*, 969 S.W.2d 880, 883 (Mo.App.1998). We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion, and we will not disturb an award of child support unless the evidence is palpably insufficient to support it. *Id.* We have reviewed the record and find that the trial court's determination as to Father's income is supported by substantial evidence and is not against the weight of the evidence. Mother's second point is denied.

Mother's third point contends that the court erred when it did not grant her past child support and birthing expenses. The trial court has discretion in awarding past child support, attorney's fees, and birthing expenses, and this court reviews such awards for abuse of discretion. *M.B. By and Through P.B. v. J.N.*, 926 S.W.2d 929, 930 (Mo.App.1996).

Mother testified that she and Father had an agreement that she would pay for the birthing expenses in exchange for shelter and necessaries. The court's assignment of the birthing expenses to Mother is rationally based on Mother's testimony, which was as follows.

Mother's attorney: When you were living there did Mr. Brown pay for a majority of all housing expenses?

Mother: Yes

. . .

Mother's attorney: And you're not asking for any back monies for things you paid prior to your separation from Mr. Brown because you did have an arrangement because he paid certain expenses and you paid the majority of Cole's expenses?

Mother: Yes.

Section 210.841(4) in pertinent part provides "[t]he court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court deems just." Section 210.841(7) provides that the "award for periodic child support may be retroactive to the date of service of the original petition upon the obligor." The law of necessaries, rather than the rule provided in child support guidelines, applies to determine the amount of an award of retroactive child support for the period before the paternity petition is filed. *Royston v. Stayton*, 859 S.W.2d 276, 277 (Mo. App.1993). Under the Uniform Parentage Act, once paternity is established, the trial court may divide the expense of past necessaries between the parents. *Schulze By and Through Schulze v. Haile*, 840 S.W.2d 263, 266 (Mo.App.1992).

In this case the trial court found that Mother had left the state with Son and left Father with no information as to her whereabouts. It further found that Mother had made every effort to thwart Fa-

ther's relationship with the child, preventing Father from seeing him for 14 months. Mother also disregarded several court orders. We find no abuse of discretion in the trial court's refusal to award Mother past birthing expenses or retroactive child support. Point denied.

■ Mother's final point argues that the court's decision to change Son's surname was against the weight of the evidence. In cases determining the surname of a child born out of wedlock, the trial court has wide discretion and should be guided by what is in the best interests of the child. *Kirksey v. Abbott*, 591 S.W.2d 751, 752 (Mo.App.1979). Neither parent has the absolute right to confer his or her name upon the child. *B.L.W. by Ellen K. v. Wollweber*, 823 S.W.2d 119, 122 (Mo.App.1992). However, while the trial court has discretion to change a child's surname, it must follow the proper procedure. *Neal v. Neal*, 941 S.W.2d 501, 503 (Mo. banc 1997). Proper procedure requires notice be given by the party seeking to have the child's name changed. *Id.* Notice is required because in changing a child's name the trial court's discretion is guided by a determination of what is in the best interests of the child. *Id.* The parent seeking to change the child's name bears the burden of proving the name change is in the child's best interests. *Schubert v. Tolivar*, 905 S.W.2d 924, 926 (Mo.App. 1995). The law does not presume it is in a child's best interests to carry the father's surname. *Id.*

In the pre-trial motions, Father requested his petition to be amended to include the change of Son's name. The court stated, "I'm assuming if I find that he is the father then I'm going to change the name to reflect the name of the father on the birth certificate and reflect the child's name as well. . . ." Father testified that he felt it would be in the best interest of the child but did not elaborate as to why that would be so. The court did not entertain any other evidence regarding the best interests of Son regarding the name change. Father did not meet his burden of proof. Mother's fourth point is granted. On remand, the trial court is directed to rescind its order changing child's surname to Father's surname.

For the foregoing reasons, the judgment is reversed and remanded with respect to joint legal custody and the change in Son's surname. In all other respects the judgment is affirmed.

BOOKER T. SHAW, P.J. and PATRICIA L. COHEN, J., Concur.