**Warren Joshua WRIGHT, Respondent,**

v.

**Anden Richard BUTTERCASE by his Next Friend, Heather Ladawn BUTTERCASE, and Heather Ladawn Buttercase, Appellants.**

**No. WD 67861.**

Missouri Court of Appeals,
Western District.

Jan. 15, 2008.

Dan Smith, Esq., Rock Port, MO, for Appellants.

Kelli D. Wulff, Esq., Independence, MO, for Respondent.

Before LOWENSTEIN, P.J., ELLIS and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

### Factual Background:

Father and Mother were never married but did engage in a brief relationship, the result of which was the birth of one child in March of 2004. Neither parent was certain at that time as to whether Father was the biological parent of the child. In fact, for close to a year, Mother told Father that another man who lived out of state was the child's biological father. She claimed that she was ninety percent sure that this was the case. A year after the child's birth, a friend of Father's informed him that, upon seeing the child, he was certain that the child was Father's. Acting on this information, Father contacted Mother, who agreed to a paternity test. The paternity test confirmed that Father was the child's parent.

After a paternity order was issued in May 2005, Father was allowed to visit the child periodically. Mother stopped allowing visitation in November 2005, and Father responded by bringing an action for a declaration of paternity and order of visitation and custody. At a hearing on April 26, 2006, the circuit court heard testimony from both parents, as well as the pastor of Father's church and one of the child's grandparents. On November 27, 2006, the circuit court entered a judgment finding that Father was the child's parent, ordering joint legal and physical custody, adopting a parenting plan produced by the parties, ordering child support to be paid to Mother by Father, and ordering that the child's surname be changed from Mother's to Father's surname. Mother appeals only the decision to change the child's name.

In her point relied on, Mother asserts that the trial court did not have before it substantial evidence on which to decide that a change in name was in the child's best interests. She notes that Father had the burden of proof, as he was the parent requesting a change in name, and argues that the evidence at trial was insufficient to meet that burden. This court disagrees and affirms the trial court's judgment.

### Standard of Review:

In a court tried case, the decision of the trial court must be affirmed unless the judgment is not supported by substantial evidence, it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). When determining the sufficiency of the evidence, this court "will accept as true the evidence and inferences from the evidence that are favorable to the circuit court's decree and disregard all contrary evidence." *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654 (Mo. banc 1989).

Neither parent has an absolute right for a child born out of wedlock to

bear that parent's surname. *Cobb by Webb v. Cobb,* 844 S.W.2d 7, 9 (Mo.App. 1992). The circuit court has wide discretion with regard to changes of surname in paternity actions and should be guided by what is in the best interests of the child in determining the appropriate surname. *Id.* For this reason, this court will accept the circuit court's ruling unless it is " 'clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Morris by Cope v. Morris,* 926 S.W.2d 87, 89 (Mo.App.1996) (quoting *State ex rel Webster v. Lehndorf Geneva, Inc.* 744 s.W.2d 801, 804 (Mo. banc 1988)). "[I]f reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Lehndorff Geneva, Inc.,* 744 S.W.2d at 804.

### DISCUSSION:

 The parent seeking to change the child's surname bears the burden of proving that the change is in the child's best interests. *Schubert v. Tolivar,* 905 S.W.2d 924, 926 (Mo.App.1995). There is no presumption that the child's best interests are served by carrying the biological father's surname. *Blechle v. Poirrier,* 110 S.W.3d 853, 855 (Mo.App.2003). Instead, certain factors should be considered. *M.L.H. by D.R.H. v. W.H.P.,* 831 S.W.2d 677, 679 (Mo.App.1992). "These factors include 'the child's age, the potential embarrassment or discomfort the child would experience when his or her surname is different than the custodial parent, and how the name change will affect the child's relationship with his parents.' " *Id. (quoting R.K. T.S. by V.T. v. R.S.,* 819 S.W.2d 749, 750 (Mo.App.1991)). A father's remark that he would like his child's name to be changed is not sufficient evidence to overcome his burden of proof. *Blechle,*

110 S.W.3d at 855. Also, testimony that amounts only to an explanation of the father's motivation for seeking a change in surname does not constitute evidence that the name change is in the best interests of the child. *See C.R.F ex rel. C.R.C. v. B.M.F.,* 174 S.W.3d 90, 92 (Mo.App.2005).

 The trial court considered each factor noted by *M.L.H.* in deciding that the change in surname was in the best interests of the child. There is ample evidence in the record to support the court's decision on these factors. First, with respect to the age of the child, the trial court heard the testimony of Mother that the child was essentially too young to be confused or upset by having his surname changed. Mother testified:

Q. [The child] doesn't use his last name—I mean, he doesn't call himself [by his full name], does he?

A. No, not at this time.

Q. Okay. Does he—He speaks, but—

A. Yes.

Q.—he just calls himself [by his first name]?A. He actually doesn't even say his first name.

Q. Okay.

A. I mean, he can. He just doesn't call himself by his first name.

Q. SO he—he doesn't really use his first or last name at this point in his life?

A. That is semi correct.

Q. Okay. Well, what's incorrect about it?

A. I mean, he'll say—he can say his first name. And he's heard his last name. And that's kind of a long name to say, so—At the age of two I think it would be hard for any two-year-old to say that last name.

Q. And you would agree that at this point he's not able to write his first

or last name, nor should he be expected to?

A. That is correct.

Mother further testified that the child had not been enrolled in school under his surname or otherwise become known by that name. This court agrees with the trial court's assessment that the child's age at the time of the change in name was conducive to effecting the change with minimal psychological impact. The trial court also considered, in its judgment, the potential embarrassment or discomfort the child might experience as a result of having a different surname than his custodial parent. At the hearing, Mother testified that she had two children. The older child was seven at the time of the hearing, was not a child of Father, and carried the surname of her biological father. Thus, the two children already had different surnames. Furthermore, Mother testified that she hoped to soon marry and intended to take the surname of her spouse when she did so. This would leave each child with a different surname than Mother and the child involved in this suit with a surname that matched neither his mother's nor his father's. Substantial evidence existed supporting the trial court's decision that little, if any, embarrassment would come from switching the child's surname to that of Father.

■■ With regard to the *M.L.H.* factors, the trial court found that considerations of how the name change would affect the child's relationship with his parents cut in favor of the change. The court had before it the testimony of Father that he was trying to build a relationship with the child. Mother also testified that Father was attempting to do so. Additionally, Father testified to the effect that every child in the surrounding community carried his or her Father's surname and that the name change would help the child identify with Father's family. The trial court found that, in this situation, the child was more likely to "feel accepted by the father if the child bears the father's name." It also found that, since the child was so young, the name change would not alter his relationship with Mother. The testimony discussed above provides substantial evidence to support these findings. In its judgment, the trial court discussed at length the 1992 decision of this court in *Cobb by Webb v. Cobb. See* 844 S.W.2d 7 (Mo.App.1992). In their briefs, the parties disagree as to how closely *Cobb* tracks the situation at bar. Contrary to Mother's arguments, *Cobb* is on point and supports the trial court's decision. In *Cobb,* this court affirmed a trial court's decision to change a child's surname to that of the biological father. *Id.* at 9. The *Cobb* court dealt with a child of two and a half years and found evidence in the record that the father was attempting to build a relationship with the child and sought a "stronger and more structured relationship." *Id.* As justification for the change in name, this court stated:

> The trial court had ample evidence before it to justify finding that a name change would be in the best interest of the child. [The child] was only 2–1/2 years old at the time of trial. [The child] is still very young and would not yet be identified by his surname to any significant extent. [The child] would be set apart from the other children in his community if he did not bear his father's surname. Mr. Webb has attempted to build a relationship with [the child] and Ms. Cobb knows of no substantial detriment to changing [the child's] surname.

*Id.* As discussed above, many of these same considerations are present in the instant case. Mother seeks to distinguish

*Cobb* by claiming that her arguments against the name change are more substantive than those dismissed by the *Cobb* court. In *Cobb*, the court noted that the mother's only real concern with changing the child's surname was that it might confuse him. *Id.* Here, Mother argues that Father's past irresponsible behavior and bad reputation in the community support a finding that it is in the best interests of the child to keep Mother's surname. The trial court, however, heard testimony that Father was taking significant steps to reform his lifestyle and that the family name was respectable due to the reputation of Father's grandparents. Where, as here, the court acts as the finder of fact, it may accept or reject "all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. bane 2002). The trial court chose to believe Father's testimony over Mother's on these issues. The decision to order the child's surname to be changed was within the court's wide discretion and was supported by substantial evidence. It was also in line with this court's prior decision in *Cobb.* Mother attempts to compare the instant situation with several cases which reversed trial court grants of name changes on the ground that substantial evidence was not presented to the court. *See C.R.F ex rel. C.R.C v. B.M.F,* 174 S.W.3d 90, 92 (Mo. App.2005) (testimony at hearing amounted only to father's belief that his son should carry his name and that no-one would be harmed by the name change); *Brown v. Shannahan,* 141 S.W.3d 77, 82 (Mo.App. 2004) (father testified merely that, in his opinion, the name change was in the best interests of his son); *Blechle v. Poirrier,* 110 S.W.3d 853, 855 (Mo.App.2003) (father offered no testimony on the matter other than to request a name change). These cases are simply not comparable to the instant case in that they involve far less evidence from trial testimony than was produced here. The evidence adduced in those cases amounted to little more than an opinion by the father that a name change should be ordered.

Finally, Mother asserts that the circuit court was biased and made its decision based on extra-judicial concerns. To support this allegation she notes that, in its judgment, the court referred to Father's grandparents by name while there was no reference to their names in the record. This court declines to speculate as to how this circumstance occurred or as to what possible significance it might hold, as the record offers sufficient evidence supporting the trial court's judgment and the decision is in accord with Missouri law.

The judgment of the circuit court is *affirmed.*

All concur.