**In re the Matter of Tyler James JENKINS, et al., Loraine Jenkins, Appellant,**

v.

**Paul K. AUSTIN, Respondent.**

**No. WD 68302.**

Missouri Court of Appeals, Western District.

May 20, 2008.

Rehearing Denied July 1, 2008.

Michaela C. Shelton-Sinkhorn, Overland Park, KS, for appellant.

Christie Elizabeth Sherman, Kansas City, MO, for respondent.

Before PAUL M. SPINDEN, Presiding Judge, JAMES M. SMART, JR., Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Loraine Jenkins (Mother) appeals from a judgment entered in the Circuit Court of Clay County changing her minor child's surname to that of the child's father, Paul Austin (Father). For the following reasons, we affirm the trial court's judgment.

The child, Tyler, was born out-of-wedlock to the couple on December 9, 2005. On January 25, 2006, Mother filed a petition to establish paternity, custody, and support. That same day, she was appointed next friend for Tyler. On February 6, 2006, Father filed a counter-petition that included a request that Tyler's surname be changed from Jenkins to Austin.

All of the issues were settled prior to hearing before the commissioner except for the issue of the name change. After a hearing on the matter, the commissioner ruled that Tyler's surname should be changed to Austin–Jenkins. Mother subsequently filed a motion for rehearing, asserting that the commissioner exceeded her authority by changing Tyler's name to Austin–Jenkins because neither parent had been in favor of using a hyphenated name. The motion for rehearing was granted by the circuit court, and the cause was remanded back to the commissioner. On December 12, 2006, without further hearing, the commissioner entered revised Findings and Recommendations concluding that it would be in the best interest of Tyler for his surname to be changed to Austin. The circuit court adopted the Findings and Recommendations of the commissioner as the Judgment and Order of the Court. Mother brings two points on appeal.

In her first point on appeal, Mother contends that the circuit court lacked jurisdiction to order a change in Tyler's name. Mother argues that the only two means for changing a minor's name are through an action under § 527.270 brought by the child's next friend or as a claim by a parent in a dissolution action. Mother asserts that Father lacked standing to request a change of name for Tyler because he was not made Tyler's next friend and this was not a dissolution action. Because Father lacked such standing to request the name change, Mother reasons, the trial court lacked jurisdiction to address the issue.

While overlooked or ignored by both parties on appeal, the circuit court's authority to change the name of a minor in the context of a paternity action was directly addressed by this Court in *Cobb by Webb v. Cobb*, 844 S.W.2d 7, 8 (Mo.App. W.D.1992). In *Cobb*, father requested a change of surname as one of the counts of his petition for declaration of paternity, and mother challenged the jurisdiction of the court to address that issue. *Id.* This Court held that the provision of § 210.841 empowering the circuit court to enter judgment on "any matter in the best interest of the child" granted authority to the circuit court to order a name change. *Id.* Further noting that § 210.849 directed that birth certificates be amended consis-

tent with the findings of the court, we held that "[c]learly, a change of name was contemplated pursuant to the provisions of the [Uniform Parentage] Act." *Id.*

Thus, in the case at bar, under the applicable statutes and case law, the trial court had jurisdiction to change the name of the child. Point denied.[1]

In her second point, Mother contends that the circuit court's decision to change Tyler's surname was not supported by the evidence and was against the weight of the evidence. Mother argues that Father failed to meet his burden of proving that a name change was in the child's best interests.

 As in any court-tried case, "we will affirm the judgment of the trial court unless there is no substantial evidence to support the decision, it is against the weight of the evidence, or the trial court erroneously declares or applies the law." *C.R.F. ex rel. C.R.C. v. B.M.F.*, 174 S.W.3d 90, 91 (Mo.App. E.D.2005). When assessing whether the judgment is supported by the evidence, we must "accept as true the evidence and inferences from the evidence that are favorable to the circuit court's decree and disregard all contrary evidence." *Wright v. Buttercase ex rel. Buttercase*, 244 S.W.3d 174, 176 (Mo.App. W.D.2008) (internal quotation omitted).

 "Neither parent has the absolute right to confer his or her name upon the child." *Brown v. Shannahan*, 141 S.W.3d 77, 82 (Mo.App. E.D.2004). "The circuit court has wide discretion with regard to changes of surname in paternity actions and should be guided by what is in the best interests of the child in determining the appropriate surname." *Wright*, 244 S.W.3d at 177. We will affirm the trial court's decision "unless it is 'clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *Id.* (quoting *Morris by Cope v. Morris*, 926 S.W.2d 87, 89 (Mo.App. W.D. 1996)).

 "The parent seeking to change the child's name bears the burden of proving the name change is in the child's best interests." *Brown*, 141 S.W.3d at 82. A

---

1. In arguing that the circuit court lacked jurisdiction, Appellant attempts to rely upon *Neal v. Neal*, 941 S.W.2d 501, 503 (Mo. banc 1997). In that case, the Missouri Supreme Court held that a circuit court had the authority to change a child's name in the context of a dissolution action. *Id.* In so holding, the court stated:

 There is no clear direction with respect to the process by which a minor child's name may be changed in a dissolution of marriage proceeding. Outside of the dissolution context, a child's name may be changed by the child's petitioning, by and through a next friend, pursuant to section 527.270, RSMo 1994, and Rule 95.01; see also Rule 95.02–03. No Missouri court has previously been called upon to decide whether the court in a dissolution proceeding has authority to change the name of a child of the marriage, or whether such a name change can be accomplished only through a change of name petition filed under section 527.270 and Rules 95.01 et seq. Considering, however, the common law right that coexists in Missouri with any statutory right and the court's equitable powers to enter judgment on any matter in the best interests of the child, the trial court cannot be said to lack authority to change the name of a minor child in a dissolution proceeding.

 *Id.* (internal citations omitted). Appellant attempts to argue that *Neal* stands for the proposition that the change of a child's name can only be accomplished under § 527.270 unless it is done in the context of a dissolution proceeding. *Neal* made no such change to the case law related to actions under the Uniform Parentage Act. In fact, *Neal* cites *Cobb* in establishing the procedural requirements to be utilized when a name change is addressed in a dissolution action. *Id.*

mere statement by a parent that he or she would like for the child's surname to match his or her own is not sufficient to overcome that burden. *Blechle v. Poirrier*, 110 S.W.3d 853, 855 (Mo.App. E.D.2003). The evidence presented by Father in the case at bar, however, went beyond such statements and sufficiently established that a change of surname was in Tyler's best interests.

■ Father testified that he believed it was in Tyler's best interest to have his surname changed to Austin. Tyler was less than a year old and was too young to be confused or upset by having his surname changed. The evidence reflects that Father was heavily involved in Tyler's life and would become even more involved in his care, under the agreed upon parenting plan, once Tyler was eighteen months old. Mother acknowledged that Father would be providing Tyler's school with information and picking Tyler up three days a week. Father opined that Tyler and his family living in St. Louis and Tennessee would have more of a connection if Tyler's surname were Austin, especially if something were to happen to Father. The record further reflects that Tyler's five-year-old half-brother also lived in Mother's house with Tyler and that the half-brother bore the surname of his biological father. Accordingly, Tyler already bore a different surname from his brother.

The evidence presented in this case is similar to that found sufficient to support a change of surname in *Wright v. Buttercase ex rel. Buttercase*, 244 S.W.3d 174, 176–78 (Mo.App. W.D.2007), and *Cobb by Webb v. Cobb*, 844 S.W.2d 7, 9 (Mo.App. W.D.1992), and we see no reason to differentiate those cases from the case at bar. The cases relied upon by Mother in arguing for reversal involve far less evidence than was presented here. *See C.R.F.*, 174 S.W.3d at 92 (holding that testimony from father that

he believed his son should bear his surname and nobody would be harmed by a name change was insufficient to support a change of name); *Blechle*, 110 S.W.3d at 855 (holding that a name change was not supported by the evidence where father merely testified that he was requesting the child's name be changed and presented no evidence as to the child's best interests).

■ While Mother claims that the trial court should not have ignored her testimony that she may experience difficulties if the child's name is different from her own, the trial court was not required to find that testimony credible or to assign it any weight. *Wright*, 244 S.W.3d at 179. Moreover, the mere fact that a parent may experience difficulties as a result of the child's surname does not necessarily affect what is in the best interests of the child. Mother acknowledged on cross-examination that Father might experience similar problems if Tyler had a different surname from his own. Certainly, there are inherent difficulties likely to arise when a child bears a different surname from a parent, but where the biological parents do not share the same surname and are opposed to using a hyphenated surname for the child, it is an unavoidable consequence that the child must bear a different surname from at least one of his or her biological parents and that one parent may experience difficulties as a result. Point denied.

The judgment is affirmed.

All concur.