

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| IN RE THE MATTER OF: H.G., <br> BY THEIR NEXT FRIEND, K.B., <br> AND K.B., INDIVIDUALLY, <br><br>        Respondents, <br><br> v. <br><br> C.G., <br><br>        Appellant. | **WD86704** <br><br> **Filed: November 12, 2024** |

### Appeal from the Circuit Court of Cooper County
### The Honorable Keith M. Bail, Judge

### Before Division Three: Thomas N. Chapman, P.J., and
### Lisa White Hardwick and Alok Ahuja, JJ.

K.B. ("Father") filed a paternity action in the Circuit Court of Cooper County, seeking to be declared the natural father of H.G.B. ("Child"), and requesting the entry of orders governing child support and child custody. C.G. ("Mother") is Child's natural mother. Following a bench trial, the circuit court entered a judgment adopting the parties' agreed parenting plan. The court also granted Father's request that Child's surname be changed to a hyphenated name consisting of both Mother's and Father's surnames. Mother appeals, arguing that the court's order of a name change constituted an abuse of discretion. We affirm.

## Factual Background

Mother and Father were in a romantic relationship during the first half of Mother's pregnancy with Child. In the Summer of 2022, a few months before Child's birth, Mother and Father separated. Mother moved to Boonville, while Father returned to his ex-wife in Warsaw. Following their separation, the parties communicated infrequently. Mother "occasionally" notified Father of medical appointments related to her pregnancy. Mother testified she did not consistently communicate with Father because she was upset that he had returned to his ex-wife.

Child, a girl, was born in Fall 2022. Father was not informed Mother had gone into labor. He did not participate in selecting Child's name, and Mother did not include his name on Child's birth certificate. From birth through the time of trial, Child resided with Mother in Boonville.

Father filed a paternity action in the Circuit Court of Cooper County on November 7, 2022, just a few weeks after Child's birth. Mother filed an answer and counter-petition. Prior to trial, the parties agreed to joint legal and physical custody of Child. They also agreed to a Joint Parenting Plan under which Father would exercise parenting time with Child approximately 25% of the time. The parties also agreed that Mother would be awarded $1,000 in monthly child support, and that Father would pay a share of the expenses for Child's extracurricular activities, and of Child's unreimbursed medical and dental expenses. One of the issues remaining for trial was Father's request that Child's surname be changed to his own.

The circuit court conducted a bench trial on September 25, 2023, at which Mother and Father testified. Regarding the surname change, Father testified that

he believed it was "very important" for Child to have a connection to his name and family history. Specifically, Father testified that "I think a child should, you know, have the father's name even if they're not together." Father also noted that the Joint Parenting Plan provided that he would have ongoing involvement in the child's life. Although Father preferred that Child carry his surname alone, he testified that he was willing to agree that Child have the hyphenated surname of both parents.

Mother testified that Father had been deceptive and had cheated on her with his ex-wife, which led Mother to end their relationship and return to Boonville. Mother also testified that when Father was a child, his father had an affair and left Father's mother. Mother claimed that the infidelity of Father, and of Father's father, was well-known in Boonville. Mother also testified, without providing specifics, that she had learned from court records that Father's family has "a criminal history" that was purportedly well-known in the community. Mother testified that she did not want Child to be associated with this disreputable family history. Mother explained that it was important for Child to carry her last name, because "I feel that my last name has done me well, and I hope it can do my daughter well as well."

The circuit court's judgment, entered on October 2, 2023, ordered that Child have the hyphenated surname of Mother and Father, with Mother's surname first. The court also ordered that Father's name be added to Child's birth certificate "to reflect he is the natural father of said child."

Mother appeals.

## Standard of Review

We review the judgment under the standards set forth in *Murphy v. Carron*, 536 S.W.3d 30, 32 (Mo. 1976). *McLeod v. McLeod*, 681 S.W.3d 215, 228 (Mo. App. W.D. 2023). We will affirm the judgment "unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Kaderly v. Kaderly*, 656 S.W.3d 333, 338 (Mo. App. W.D. 2022) (quoting *Reichard v. Reichard*, 637 S.W.3d 559, 569 (Mo. App. W.D. 2021)). When determining the sufficiency of the evidence, this court "will accept as true the evidence and inferences from the evidence that are favorable to the [circuit] court's decree and disregard all contrary evidence." *Wright v. Buttercase ex rel. Buttercase*, 244 S.W.3d 174, 176 (Mo. App. W.D. 2008) (quoting *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. 1989)).

## Discussion

In her sole Point on appeal, Mother argues that the circuit court abused its discretion by arbitrarily changing Child's surname.

Section 210.841.3(5), RSMo provides that a circuit court's judgment in a paternity action "may contain . . . provision[s] . . . concerning: . . . [a]ny matter in the best interest of the child." Section 210.841.3(5) "grant[s] authority to the circuit court to order a name change." *Jenkins v. Austin*, 255 S.W.3d 24, 26 (Mo. App. W.D. 2008) (citing *Cobb by Webb v. Cobb*, 844 S.W.2d 7, 8 (Mo. App. W.D. 1992)); *cf. Neal v. Neal*, 941 S.W.2d 501, 503 (Mo. 1997) (holding that circuit courts have authority to change a child's name during marital dissolution proceedings, based on "the court's equitable powers to enter judgment on any matter in the best interests of the child").

4

In Missouri, no legal presumption exists that a child born out of wedlock should bear a particular parent's surname.  *Wright*, 244 S.W.3d at 177-178.  In particular, "[t]he law does not presume it is in the child's best interest to carry *the father's* surname."  *C.R.F. ex rel. C.R.C. v. B.M.F.*, 174 S.W.3d 90, 92 (Mo. App. E.D. 2005) (emphasis added; citing *Brown v. Shannahan*, 141 S.W.3d 77, 82 (Mo. App. E.D. 2004)); *accord Blechle v. Poirrier*, 110 S.W.3d 853, 855 (Mo. App. E.D. 2003).  "'Neither parent has the absolute right to confer his or her name upon the child.'"  *Jenkins*, 255 S.W.3d at 27 (quoting *Brown*, 141 S.W.3d at 82).

In determining the appropriate surname for a child born out of wedlock, the circuit court "has wide discretion and should be guided by what is in the best interests of the child."  *Blechle*, 110 S.W.3d at 855 (quoting *B.L.W. by Ellen K. v. Wollweber*, 823 S.W.2d 119, 122 (Mo. App. S.D. 1992)); *see also M.R.H. v. J.N.P.*, 385 S.W.3d 494, 497 (Mo. App. E.D. 2012).  The burden is on the parent seeking to change the child's surname to prove such a change is in the child's best interests.  *Wright*, 244 S.W.3d at 177.  The factors the circuit court should consider include "(1) the child's age, (2) the potential embarrassment or discomfort the child might experience when his or her surname is different from the custodial parent, and (3) how the name change will affect the child's relationship with his parents."  *M.R.H.*, 385 S.W.3d at 498 (citing *Wright*, 244 S.W.3d at 177, which in turn cites *M.L.H. by D.R.H. v. W.H.P.*, 831 S.W.2d 677, 679 (Mo. App. W.D. 1992)).

A parent's bare request that the child's surname be changed to match the parent, or conclusory testimony that the parent believes the child "should carry

on [the parent's] name," are insufficient to satisfy the parent's burden to prove that a name change is in the child's best interest. *C.R.F.*, 174 S.W.3d at 92 (reversing circuit court judgment ordering name change); *see also Perkins v. Delmont ex rel. Delmont*, 254 S.W.3d 899, 900 (Mo. App. S.D. 2008) (reversing order for name change where the only testimony concerning the issue was father's request that the court change child's surname to match his own); *Blechle v. Poirrier*, 110 S.W.3d 853, 855 (Mo. App. E.D. 2003) (same). Similarly, a parent's conclusory testimony that it would be in the child's best interest to have the parent's surname, without elaboration, is insufficient to justify a name change. *Brown*, 141 S.W.3d at 82.

On the other hand, this Court has affirmed judgments ordering a name change where a child was in their infancy, and where the evidence indicated that a name change would foster the child's relationship with a parent who would be substantially involved in the child's upbringing. Thus, in *Wright v. Buttercase ex rel. Buttercase*, 244 S.W.3d 174 (Mo. App. W.D. 2008), this Court affirmed a judgment ordering that a child's surname be changed to the father's, where there was evidence that the father "was trying to build a relationship with the child." *Id.* at 178. Further, the father testified "that every child in the surrounding community carried his or her Father's surname and that the name change would help the child identify with Father's family." *Id.* The Court also noted that the child was only approximately two years old at the time of the circuit court's judgment, and that, "since the child was so young, the name change would not alter his relationship with Mother." *Id.* Based primarily on these considerations, the Court found that "[t]he decision to order the child's surname to be changed

6

was within the court's wide discretion and was supported by substantial evidence." *Id.* at 179; *see also Jenkins*, 255 S.W.3d at 28 (affirming circuit court's ordering of a name change where child was less than one year old, "Father was heavily involved in [the child's] life," and Father testified that change of surname would foster the relationship between the child and Father's family); *Cobb*, 844 S.W.2d at 9 (affirming circuit court judgment changing child's surname to match father's, based on evidence that child "would be set apart from the other children in his community if he did not bear his father's surname," and that father "has attempted to build a relationship with" the child).

We emphasize, however, that evidence of a child's infancy, and that a name change would assist a parent's efforts to foster a substantial long-term relationship with the child, does not *mandate* a name change. Instead, whether to grant a name change in such circumstances falls within a circuit court's "wide discretion" as it assesses a child's best interests. We note that this Court affirmed a circuit court's *refusal* to order that a child bear a hyphenated name, in factual circumstances similar to *Wright*, in *M.R.H. v. J.N.P.*, 385 S.W.3d 494 (Mo. App. E.D. 2012). *M.R.H.* emphasized that "[t]his Court's sole function . . . is to assess whether the trial court's decision was outside the bounds of the wide discretion it is afforded when ruling on name changes in paternity actions." *Id.* at 498.

The circuit court did not abuse its discretion in ordering a name change in the circumstances of this case. Child was less than one year old at the time the circuit court ordered the name change. There was no testimony that the Child was aware of, or attached to, her existing surname; moreover, because Child was not yet in school, she would not have become known by her existing surname

7

among her peers. Father also testified that it was "very important" to him that Child's name reflect a connection to him and to his family's history. Further, Father evidently desires to maintain a significant ongoing parental relationship with Child, since he initiated this paternity action within weeks of Child's birth in order to formalize their relationship. The parties agreed to a parenting plan which recognizes that Father was a suitable parent to exercise joint legal and physical custody over Child. The joint parenting plan provides Father with substantial parenting time. Father also agreed to assume substantial financial responsibility for Child: he agreed to pay $1,000 per month in child support; to maintain health insurance for Child if necessary; and to reimburse Mother for a share of Child's uninsured medical and dental expenses, and expenses of extracurricular activities.

The circuit court also heard testimony that Mother failed to inform Father of her pregnancy-related medical appointments or her labor, that she denied him the opportunity to participate in the selection of Child's name at birth, and that she did not identify him as Child's natural father on Child's birth certificate (even though there was apparently no question concerning Child's paternity). The evidence supported the conclusion that Mother took these actions due to her own animosity toward Father because of his deception and infidelity, rather than based on any consideration of *Child's* best interests. Mother's actions of unilaterally naming Child, without input from Father, is in tension with the principle that "'[n]either parent has the absolute right to confer his or her name upon the child.'" *Jenkins*, 255 S.W.3d at 27 (emphasis added; citation omitted). While Father bore the burden of proving that a <u>*change*</u> of Child's surname was in

8

Child's best interest, the circuit could justifiably conclude that any presumption in favor of Child's *existing* name was diminished where Mother denied Father any influence over the initial selection of Child's name. *See Interest of C.M.V.*, 479 S.W.3d 352, 359 (Tex. App. 2015) (listing among factors court may consider in addressing a name-change request: "whether either parent is motivated by concerns other than the child's best interest – for example, an attempt to alienate the child from the other parent").

In her testimony, Mother claimed that Child would be stigmatized by carrying Father's surname, because it was purportedly well-known in the community that Father, and Father's father, had been unfaithful to their romantic partners, and that members of Father's family had some unspecified "criminal history." In its role as finder of fact, the circuit court was entitled to discount this testimony. *See Wright*, 244 S.W.3d at 179 (holding that circuit court, as fact-finder, was entitled to reject Mother's claims "that Father's past irresponsible behavior and bad reputation in the community support a finding that it is in the best interests of the child to keep Mother's surname").

Thus, sufficient competent evidence supported the circuit court's conclusion that it was in Child's best interest to change her surname to reflect her relationship to Father. It is also significant that, in this case, the circuit court ordered that Child bear a hyphenated surname which incorporates the surnames of both Father and Mother. Notably, in *Wright*, *Jenkins*, *R.W.B.* and *Cobb*, this Court affirmed circuit court orders which changed a child's surname to that of *the father <u>alone</u>*, in circumstances similar to the present case. Here, by contrast, Child's surname will reflect her relationship to <u>*both*</u> of her parents.

The circuit court could properly conclude that use of a hyphenated surname would prevent the confusion which would result if Child bore the surname of only one of the two parents who share custody over her. Among the factors which the circuit court may consider in addressing a name change request is "the potential embarrassment or discomfort the child might experience when his or her surname is different from the custodial parent." *M.R.H.*, 385 S.W.3d at 498. "As the child custody statutes now read, in cases where joint physical custody has been awarded – both parents are considered 'custodial' parents." *Gaudreau v. Barnes*, 429 S.W.3d 429, 433 (Mo. App. E.D. 2014). Thus, in this case, Child has two "custodial parents," with different surnames.

We have previously recognized that, where a child has two custodial parents who live apart with different surnames, giving the child *either* parent's surname, to the exclusion of the other parent's name, may present problems for the child and for the parents.

> [T]here are inherent difficulties likely to arise when a child bears a different surname from a parent, but where the biological parents do not share the same surname and are opposed to using a hyphenated surname for the child, it is an unavoidable consequence that the child must bear a different surname from at least one of his or her biological parents and that one parent may experience difficulties as a result.

*Jenkins*, 255 S.W.3d at 28.

Hyphenated surnames may avoid some of the inherent difficulties of recognizing only one-half of a child's lineage in their surname. In this case, the circuit court could decide in its discretion that giving Child a hyphenated last name which incorporated the surnames of both of her custodial parents would avoid "the potential embarrassment or discomfort" if her surname were not to

10

match the surname of either of her parents.  As explained by the Supreme Court of Ohio,

> [a] combined surname is a solution that recognizes each parent's legitimate claims and threatens neither parent's rights.  The name merely represents the truth that both parents created the child and that both parents have responsibility for that child.

*In re Wilhite*, 706 N.E.2d 778, 782 (Ohio 1999) (citations omitted).  Other courts have likewise recognized that the use of a hyphenated surname may help maintain a child's relationship with <u>both</u> parents, and thus may be in the best interest of the child.[1]  In this case, any potential that the name change might adversely affect *Mother's* relationship with Child is diminished by the fact that Child will continue to carry Mother's surname as part of her own.  The circuit court did not abuse its wide discretion in this case when it ordered that Child be given a hyphenated surname reflecting her relationship to both of her parents.

## Conclusion

The circuit court acted well within its wide discretion in concluding that a name change was warranted in this case, and that decision was supported by sufficient competent evidence.  The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur.

---

[1]    *See, e.g., Velasquez v. Chavez*, 455 P.3d 95, 98-99 (Utah App. 2019); *In re J.P.H.*, 865 N.W.2d 488, 491 (S.D. 2015); *In re Eberhardt*, 920 N.Y.S.2d 216, 222 (App. Div. 2011); *In re A.C.S.*, 171 P.3d 1148, 1153-54 (Alaska 2007); *In re Andrews by and through Andrews*, 454 N.W.2d 488, 493 (Neb. 1990); *In re Marriage of Douglass*, 252 Cal.Rptr. 839, 844-45 (App. 1988).