

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI ex rel.       )
ERIC SCHMITT,                   )
                                )
            Relator,            )
                                )
v.                              )       No. SD37760
                                )
THE HONORABLE THOMAS PYLE,      )       **Filed:  December 13, 2022**
Cedar County Associate Circuit Judge, )
                                )
            Respondent.         )

**ORIGINAL PROCEEDING IN PROHIBITION**

**PRELIMINARY WRIT OF PROHIBITION MADE PERMANENT**

On September 26, 2022, the State of Missouri, acting by and through its Attorney General, Eric Schmitt ("Relator"), filed a petition against Agapé Boarding School ("Agapé") that asked the circuit court to grant an injunction that would require Agapé to cease operations due to what Relator alleged were widespread occurrences of children ("the children") being abused and neglected at the facility ("the underlying case").

In the current action before this court (the "writ proceeding"), Relator asks us to make permanent a preliminary writ of prohibition we issued that prohibited the circuit court from ordering that:  (1) all of the parents of the children at Agapé be joined as

1

"necessary" parties in the underlying case; and (2) a guardian *ad litem* ("GAL") be appointed for each one of the children.

Because Rule 52.04(a)[1] does not mandate that the parents be joined as necessary parties, and section 210.1271[2] does not authorize the appointment of guardians *ad litem* at this stage of the underlying case, we make permanent our preliminary writ of prohibition.

## Background[3]

After current and former students of Agapé reported that current and former staff members of the school had abused and neglected them, Relator filed the underlying case pursuant to section 210.1271. The petition sought the closure of Agapé and the removal of the children to safety. The petition alleged that the State had received reports of acts of abuse and neglect committed by current and former Agapé employees, including the use of prolonged handcuffing and painful physical restraints; that Missouri Department of Social Services ("DSS") reported that current Agapé staff members had committed abuse or neglect against Agapé students (with one current Agapé staff member facing criminal assault charges for those actions); and that multiple individuals on the Agapé "Employee list" had not completed mandatory background checks as required by Missouri statute. The petition also alleged that the abuse and neglect would still be occurring if DSS employees were not currently present at the facility 24 hours a day.

---

[1] All rule references are to Missouri Court Rules (2022).
[2] All statutory citations are to RSMo Cum. Supp. 2021.
[3] This writ proceeding involves a purely procedural dispute. As no evidentiary hearing has yet been held in the underlying case, we take our background summary from the pleadings and briefs of the parties. No fact-finder has yet determined the truth or falsity of any of the parties' asserted facts.

On October 10, 2022, Agapé filed a motion requesting that the children's parents be added as indispensable parties pursuant to Rule 52.04 and that a separate GAL be appointed for each child currently residing at Agapé. The Honorable Thomas Pyle ("Respondent") granted Agapé's motion and ordered: (1) that Relator make all of the parents of the children parties to the underlying case, and (2) that a GAL be appointed for each child ("Respondent's order").

Relator reacted to Respondent's order by filing the instant petition for a writ of prohibition, which challenged the validity of both aspects of Respondent's order on the ground that it constituted an abuse of discretion and exceeded Respondent's authority under Rule 52.04(a) and section 210.1271.

## Jurisdiction and Standard of Review

Article V, section 4.1 of the Missouri Constitution gives this court "superintending control over all courts and tribunals in its jurisdiction[,]" as well as the authority to issue original remedial writs. Cedar County is within this court's territorial jurisdiction. Section 477.060.

> A writ of prohibition may issue to: (1) "prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction;" (2) "remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended;" or when (3) "a party may suffer irreparable harm if relief is not granted."

*State ex rel. Woodco, Inc. v. Phillips*, 603 S.W.3d 873, 875 (Mo. banc 2020).

## The Governing Law

Relator brought suit under section 210.1271, a newly-enacted statute that affords injunctive relief against residential care facilities such as Agapé. The

relevant statutory language governs both of Relator's points on appeal, and we recite it verbatim.

> 1. Notwithstanding any other remedy, [DSS], the prosecuting or circuit attorney of the county where the facility is located, or the attorney general may seek injunctive relief to cease the operation of the residential care facility and provide for the appropriate removal of the children from the residential care facility and placement in the custody of the parent or legal guardian or any other appropriate individual or entity in the discretion of *the court*, refer the matter to the juvenile officer of the appropriate county *for appropriate proceedings under chapter 211*, or other orders as the court determines appropriate to ensure the *health and safety* of the children. *Such action shall be brought in the circuit court* of the county in which such residential care facility is located and shall be initiated only for the following violations:

> . . . .

> (3) Failing to comply with background checks as required by section 210.493; or

> (4) An immediate health or safety concern for the children at the residential care facility.

> 2. In cases of an order granted ex parte under subsection 1 of this section requiring a residential care facility to cease operations, a hearing shall be held within three business days to determine whether the order shall remain in effect, with *attempted* notice to the facility and the parents or guardians and due process for all parties. In determining whether the order shall remain in effect, the court shall consider whether there exists reasonable cause to believe that the grounds for the original ex parte order continue to persist or if additional grounds exist to support the ex parte order as necessary to protect the health and safety of the children at the facility.

> 3. [DSS] may notify the attorney general of any case in which [DSS] *makes a referral to a juvenile officer for removal of a child from a residential care facility*. The notification shall include any violations under subsection 1 of this section.

> 4. *If the court refers the matter to a juvenile officer*, the *court* may also enter an order *placing* a child in the emergency, *temporary protective custody of the children's division within* [*DSS*], as provided under this section, for a period of time not to exceed five days. Such *placement* shall occur only if the children's division certifies to the court that the

4

children's division has a suitable, temporary placement for the child and the court makes specific, written findings that:

(1) It is contrary to the welfare of the child to remain in the residential care facility;

(2) That the parent or legal guardian is unable or unwilling to take physical custody of the child within that time; and

(3) There is no other temporary, suitable placement for the child.

If the parent or legal guardian of the child does not make suitable arrangements for the custody and disposition of the child within five days of *placement within the children's division, the child shall fall under the original and exclusive jurisdiction of the juvenile court* under subdivision (1) or (2) of subsection 1 of section 211.031 and the juvenile officer shall file a petition with the juvenile court for further proceedings. Under no circumstances shall the children's division be required to retain care and custody of the child for more than five days without an order from the juvenile court.

5. The provisions of sections 452.700 to 452.930 [the Uniform Child Custody Jurisdiction and Enforcement Act [("UCCJEA")] shall apply and the court shall follow the procedures specified under section 452.755 for children who are *placed* at a residential care facility and who are from another state or country or are under the jurisdiction or authority of a court from another state.

(Emphasis added.)

## Analysis

### *Point 1 – Joining all Parents*

Relator's first point claims:

Respondent exceeded his authority and abused his discretion by ordering the State to make the parents of the children at Agapé parties to the underlying suit, because the parents are not necessary parties under Rule 52.04(a), in that (1) full relief can be had among those who are already parties to the underlying suit, (2) no provision of § 210.1271 makes the parents necessary parties, (3) the parents have not claimed any interest in the underlying suit, (4) the absence of the parents as parties will not impair or impede their ability to protect any interest they might have in the ongoing business operations of Agapé (e.g., the contractual interest identified by Respondent), and (5) the absence of the parents as parties

5

will not subject any of the parties to a risk of incurring double, multiple, or otherwise inconsistent obligations by reason of any claimed interest of the parents.

We agree.

Respondent's order stated that all parents were necessary parties to the underlying case because

> [a]s noted in [*In re M.A.F.*], 232 S.W.3d 640 (Mo. App. 2007)[,] "Proper procedure requires notice and opportunity for adequate preparation for hearing by both parents. Notice is required, not only to comply with due process, but also because the trial court's discretion in changing a child's name is guided by a determination of what is in the best interests of the child. [*Schubert v. Tolivar*], 905 S.W.2d 924, 926 (Mo. App. E.D. 1995). **The trial court cannot be assured that evidence with respect to best interests has been fully developed without notice to the parents.**" (emphasis added) The case at bar involves the proposed closing of a private religious boarding school chosen and contracted for by the parents who remain the natural guardians of their children. Parents are found to be necessary parties.

Rule 52.04, Joinder of Persons Needed for Just Adjudication, provides for only two situations in which persons shall be joined as necessary parties:

> **(a) Persons to Be Joined if Feasible.** A person shall be joined in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant.

While only one prong of Rule 52.04(a) needs to be satisfied for courts to label a party as "necessary," *Woodco Inc.*, 603 S.W.3d at 876, neither prong has been met in this case.

6

Respondent argues that section (1) is implicated in that complete relief cannot be afforded without the parents "because our courts have recognized the right of natural parents to be 'necessary parties' to actions involving decisions affecting custody and placement of their children." Respondent's legal arguments, however, rely solely on paternity and custody cases for support – cases that are inapposite to the underlying case seeking injunctive relief based upon health and safety concerns in a residential care facility.

The underlying case concerns Relator's attempts to close a residential care facility. To that end, Relator's petition seeks, first and foremost, to remove the children from what it claims are abusive and neglectful conditions at Agapé and place those children back with their parents or legal guardians.

The enabling statute – and Relator's petition – contemplate involvement of a juvenile officer and temporary protective custody for a child "***only***" if there are written findings that the parent or legal guardian is unable or unwilling to take physical custody of the child within the time period provided. *See* section 210.1271.4(2) (emphasis added).

Neither party to the writ proceeding claims that such findings have been made in the underlying case. No evidence has been presented in the underlying case, and there is no evidence that any child has come under the care and protection of the juvenile division of the circuit court. Respondent's order itself notes that the juvenile officer has not removed any children from Agapé at this point in time, let alone placed any child into protective custody with the Children's Division.

At this point in the underlying case, complete relief can be accorded amongst the current parties to the action – the State, DSS, and Agapé (the interested parties contemplated by the statute).  *See* section 210.1271.1 (stating that "[DSS], the prosecuting or circuit attorney of the county where the facility is located, or the attorney general may seek injunctive relief to cease the operation of the residential care facility").

Respondent argues that section (2) of Rule 52.04(a) is implicated as the parents claim an interest in the subject of the action, but Respondent does not assert that any parents it seeks to join as necessary parties have actually asked to be made parties to the case or have claimed any such interest.  Rather, Respondent argues that the parents' interests were automatically implicated when Relator made requests relating to the "care, custody and placement" of the children.[4]

Respondent's argument overlooks several key points, not the least of which is that Relator's petition seeks, in accordance with the statute, to remove the children from Agapé and place them "in the custody of the parent or legal guardian or any other appropriate individual or entity in the discretion of the court[.]"  The relief Relator requests is consistent with the statute, which states that any children removed from the residential care facility shall be placed with "the parent or legal guardian[.]"  Section 210.1271.1.

---

[4] Respondent also relies upon section 210.1271.2 to argue that Respondent "is **required** to provide the parents notice and due process regarding the care, placement[,] and custody of their children." Respondent's reliance on this section of the statute, however, is misplaced as subsection .2 regarding "*attempted notice* to the facility and the parents or guardians and due process *for all parties*" applies only in situations where the court has granted an *ex parte* order requiring the residential facility to cease operations. (Emphasis added.)  Because no such order has been entered in the underlying case, subsection .2 does not apply.

The statute provides for temporary, emergency placement with the Children's Division if the court makes written findings that include the fact that the parent or legal guardian is unable or unwilling to take custody of the child. Section 210.1271.4(2). This temporary-emergency-custody provision is a stop-gap measure to allow the parent or legal guardian to make any necessary arrangements for the custody of the child. Section 210.1271.4. Only if the parent or legal guardian does not make arrangements for the child during that timeframe would the child "fall under the original and exclusive jurisdiction of the juvenile court under subdivision (1) or (2) of subsection 1 of section 211.031[5] and the juvenile officer shall file a petition with the juvenile court for further proceedings." Section 210.1271.4(3).

To that end, Relator's prayer for relief further asked the court

> [t]o place the children at [Agapé] in the temporary custody of the Children's Division until their legal guardian arrives or refuses to pick up the child, in which case the children would remain in the legal custody of the Children's Division[.]

We need not determine whether Respondent would have the legal authority to order the Children's Division to take (or continue) temporary custody of a child for more than five days without the parent being made a party to a case pending in the juvenile division for that purpose because neither Relator nor Respondent has claimed that any parent or legal guardian has refused to maintain their lawful custody of their child or ward.

---

[5] These subsections of the statute provide for the juvenile or family court to have exclusive jurisdiction when a child is found to meet the statutory requirements for care and treatment.

Respondent's arguments in opposition to Relator's point rely on a faulty premise – that the underlying case is in the nature of a child custody case. It is not. Relator seeks an injunction in the underlying case that would require Agapé to cease its business operations and return the children to their parents or legal guardians. At this time, such matters can be resolved without the children's parents being included as parties in the underlying case, and a "writ of prohibition is appropriate when a party joined pursuant to Rule 52.04 is not needed for just adjudication." *Woodco, Inc.*, 603 S.W.3d at 876 n.1.

Point 1 is granted.

*Point 2 – Appointment of Guardians ad Litem*

Relator's second point contends that

Respondent exceeded his authority by ordering the appointment of a [GAL] for each child at Agapé, because [section] 210.1271 does not authorize the appointment of guardians ad litem at this stage of the proceedings, in that (1) there was no showing that the children are from other states or countries, and (2) the children have not been placed in a residential care facility by the court.

Once again, we agree.

In support of Respondent's order that a GAL be appointed for each child currently residing at Agapé, Respondent relies upon section 210.1271.5 as follows:

Finally, as to appointment of a [GAL], the new statute specifically provides: "5. The provisions of sections 452.700 to 452.930 [UCCJEA] shall apply". RSMo. §452.785 states: "5. The court shall appoint [a GAL] in any proceeding in which child abuse or neglect is alleged."

Respondent's rationale, however, omits the following relevant portions of section 210.1271.5:

5. The provisions of sections 452.700 to 452.930 shall apply and the court shall follow the procedures specified under section 452.755 for children who are *placed* at a residential care facility *and who are from another state or country or are under the jurisdiction or authority of a court from another state.* (Emphasis added.)

The plain language of the statute makes clear that two conditions must be present before the court is required to appoint a GAL: (1) the children must be "placed" at a residential care facility; and (2) the children must be from another state or country or under the jurisdiction or authority of a court from another state.

Relator has not found, as a matter of fact, that any of the children residing at Agapé fell within the second condition -- that a particular child is from another state or country or is under the jurisdiction or authority of a court in another state.

More importantly, condition number one does not exist here as the children residing at Agapé were not "placed" in that facility as that term is used in Section 210.1271. That statute, along with sections 452.700 to 452.930, govern the conduct of *public* entities: Missouri courts, Missouri public officials, residential care facilities located in Missouri, and the proper relationship between courts located in different states; they do not govern the private decisions of parents and legal guardians as to where they choose to have their children or wards reside.

A plain reading of the statutes at issue in their full context makes clear that the "placement" discussed therein relates to a court's discretion to remove a child from the custody and care of a parent or legal guardian and *place* that child in the custody of another person or entity deemed appropriate by the court, to wit:

11

1. Notwithstanding any other remedy, the department, the prosecuting or circuit attorney of the county where the facility is located, or the attorney general may seek injunctive relief to cease the operation of the residential care facility *and provide for the appropriate removal of the children from the residential care facility and placement in the custody of the parent or legal guardian or any other appropriate individual or entity in the discretion of the court, refer the matter to the juvenile officer of the appropriate county for appropriate proceedings under chapter 211, or other orders as the court determines appropriate to ensure the health and safety of the children*[.]

4. *If **the court** refers the matter to a juvenile officer, the court may also enter an order **placing** a child in the emergency, temporary protective custody of the children's division within* [*DSS*], *as provided under this section, for a period of time not to exceed five days. Such placement shall occur only if the children's division certifies to the court that the children's division has a suitable, temporary placement for the child and the court makes specific, written findings*[.]

Section 210.1271.1, .4 (emphasis added).

Therefore, we agree with Relator that the statutes at issue use the term "place" or "placement" to mean a placement ordered by the appropriate court in connection with an action pursuant to section 210.1271 – it does not refer to (or govern) a parent's or legal guardian's original decision to send their child or ward to reside at Agapé. In accordance with that interpretation, we conclude that Respondent was without statutory authority to enter an order requiring the appointment of a GAL for each child now residing at Agapé.

Point 2 is granted.

## Conclusion

Because Rule 52.04(a) does not mandate that the parents be joined as parties, and because section 210.1271 does not allow for the appointment of guardians *ad litem* at this stage of the underlying case, no legal authority supports the Respondent's order. The appropriate remedy is a writ of prohibition. ***State ex***

12

*rel. Waller v. Tobben*, 529 S.W.3d 21, 27-28 (Mo. App. E.D. 2017).  This court hereby makes permanent its preliminary writ of prohibition and directs Respondent to vacate Respondent's order.

DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS